# STATE OF MICHIGAN

# COURT OF APPEALS

---

CHRISTOPHER BUTLER,

        Plaintiff/Counter-Defendant-
Appellee,

v

SHERRY LYNN SIMMONS-BUTLER,

        Defendant/Counter-Plaintiff-
Appellant.

FOR PUBLICATION
November 18, 2014
9:30 a.m.

No. 321445
St. Clair Circuit Court
LC No. 12-002047-DM

---

Before: WHITBECK, P.J., and FITZGERALD and MURRAY, JJ.

MURRAY, J.

Defendant, Sherry Lynn Simmons-Butler, appeals as of right a divorce judgment entered by the St. Clair Circuit Court. On appeal, defendant generally argues that the trial court erred in (1) its custody and parenting time determinations with respect to the parties' two minor children, (2) its division of the marital property and debt, and (3) its determinations regarding child support and spousal support. Intermixed in these general issues are several discreet ones, including whether the trial court had the authority to compel defendant to sign joint tax returns with plaintiff. Defendant further argues that the trial judge should be disqualified from any and all subsequent post-judgment proceedings. For the reasons outlined below, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS

It is an understatement to say that this marriage went downhill quickly. The parties "met" through an internet based dating company, and were married in October 2007. Plaintiff, a border patrol agent, was the main income source throughout the marriage, as defendant mostly stayed at home (with the children who were born soon after the marriage) until just prior to the divorce. Living in Arizona, just a year into the marriage the parties both allegedly engaged in domestic violence, leading defendant in 2010 to seek a personal protection order and a divorce from plaintiff in the Arizona courts. Ultimately the parties reconciled and moved to Michigan in 2011. By that time the parties had two young sons. The turmoil, unfortunately, did not end once they arrived on Michigan soil.

In fact, less than two years after moving to this state, defendant took the children without plaintiff's knowledge, and plaintiff almost immediately filed for divorce. Defendant repeatedly

-1-

accused plaintiff of inappropriate behavior with the older child, but nothing was ever verified or confirmed. With the court now involved, the parties filed numerous motions (and defendant fired a good number of her attorneys) and engaged in significant discovery and counseling. The court twice temporarily changed the children's custody, with the last order awarding plaintiff temporary custody. Defendant was held in contempt of court for failing to comply with an order to return the children after parenting time, which ultimately led to her incarceration just prior to trial.

Trial occurred in late 2013, and after hearing all the evidence (much of which was presented by plaintiff), the court issued a very thorough, well-written and reasoned opinion granting sole legal and physical custody to plaintiff, awarding plaintiff the marital home and all of its accompanying debt, evenly splitting the marital portion of plaintiff's main pension, and awarding two cars to plaintiff and the latest model to defendant. Spousal support was not awarded, defendant was ordered to pay child support, and miscellaneous other economic matters were decided by the court.

The final judgment of divorce was consistent with these rulings. Defendant now appeals that judgment as of right.

## II. ANALYSIS

The first part of our analysis addresses defendant's challenge to the trial court's awarding both legal and physical custody of the children exclusively to plaintiff. As detailed below, successful appellate challenges to custody decisions are very difficult to come by, mostly because of the very deferential appellate standard of review. What makes this challenge even more difficult for defendant is that the trial court provided a complete written analysis on each of the relevant statutory best interest factors.

## A. CUSTODY ISSUES

A custody order "shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. Under the great weight standard, the trial court's factual determinations will be affirmed unless the evidence clearly preponderates in the other direction. *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010); *Mitchell v Mitchell*, 296 Mich App 513, 519; 823 NW2d 153 (2012). In reviewing the findings, this Court defers to the trial court's credibility determinations. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). We apply the abuse of discretion standard to the trial court's discretionary rulings such as to whom custody is granted. *Fletcher v Fletcher*, 447 Mich 871, 879-880; 526 NW2d 889 (1994); *Shann*, 293 Mich App at 305. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Fletcher*, 447 Mich at 879-880; *Mitchell*, 296 Mich App at 522. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. *Fletcher*, 447 Mich at 881; *Sturgis v Sturgis*, 302 Mich App 706, 710; 840 NW2d 408 (2013).

## 1. LEGAL CUSTODY

Defendant argues that in awarding sole legal custody to plaintiff the court did not articulate with any specificity why it was doing so. The trial court's opinion belies this assertion. As defendant admits, in making this ruling the trial court specifically found that "[t]hrough her behavior, Defendant has demonstrated that she is both unwilling and unable to communicate and cooperate with Plaintiff that is in the children's best interests." This is squarely in line with what is required to be considered under MCL 722.26a(1)(b), and in conjunction with its detailed findings under the best interest factors outlined in MCL 722.23, the court also complied with the other necessary finding prior to deciding legal custody. MCL 722.26a(1)(a). These findings were more than adequate to comply with the statute, and to support its decision awarding plaintiff sole legal custody.[1]

## 2. PHYSICAL CUSTODY

Defendant also takes issue with the adequacy of the trial court's best interests findings made in support of its physical custody award, as well as its findings on an established custodial environment.[2] We hold that the trial court's findings supportive of its custody order were not against the great weight of the evidence and the trial court did not abuse its discretion in ruling that plaintiff should be granted sole physical custody of the children.

Whether an established custodial environment exists is a question of fact that the trial court must address before it determines the child's best interest. *Brausch v Brausch*, 283 Mich App 339, 356 n 7; 770 NW2d 77 (2009). A custodial environment is established if:

> [O]ver an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

---

[1] Defendant's argument that plaintiff agreed on the record that the parties should have joint legal custody of the children is based upon an isolated reading of the transcript. Plaintiff's remarks were made in the context of attempting to make an agreement with defendant, an offer that defendant flatly rejected.

[2] In support of its decision to change the temporary custody order during pretrial proceedings, the trial court cited to *Thompson v Thompson*, 261 Mich App 353, 357; 683 NW2d 250 (2004), which held that a trial court is not required to make a finding of proper cause or change in circumstances before modifying a temporary custody order entered during pretrial proceedings. Despite the trial court citing to this explicit authority, defendant fails to address this case in making her challenge to the change in temporary custody. *Thompson* controls and compels rejection of defendant's challenge.

An established custodial environment is one of significant duration, both physical and psychological, in which the relationship between the custodian and child is marked by security, stability and permanence. *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981); *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008). The provisions of a parenting time order do not alone establish a custodial environment. *Pierron*, 486 Mich at 87 n 3.

The trial court found that there was no established custodial environment with either parent, and the evidence did not clearly preponderate against that decision. Essentially the evidence showed that there was repeated turmoil in these children's lives since their birth to the time of the divorce proceedings, and once the divorce proceedings commenced, there were repeated custody changes. The children lived with both parties from birth until August 12, 2012, when defendant left the marital home with them. The children then lived with defendant until the trial court granted plaintiff temporary custody in July 2013. Defendant took the children for a period of time in November 2013 in violation of the custody order, but the children otherwise remained in plaintiff's care until the issuance of the trial court's March 2014 opinion and decision. During this time there was also significant turmoil in the relationships the children had with their parents. The record evidence—not to mention the case law—firmly supports the trial court's finding that no established custodial environment existed between the children and either parent. *Hayes v Hayes*, 209 Mich App 385, 387-389; 532 NW2d 190 (1995); *Bowers v Bowers*, 198 Mich App 320, 323-327; 497 NW2d 602 (1993).

The trial court then properly went on to determine the appropriate custody arrangement for the children, and thus turned to the best interest factors set forth in MCL 722.23. Those factors include consideration of:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
>
> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
>
> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (f) The moral fitness of the parties involved.
>
> (g) The mental and physical health of the parties involved.
>
> (h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

"A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006).

Defendant argues that the trial court failed to set forth sufficient reasoning concerning its custody determination. However, the trial court's written opinion unquestionably reveals that the trial court made the necessary detailed factual findings regarding each relevant best interest factor. Specifically, the trial court found the parties equal on the factor involving love, affection, and emotional ties between the parties and the children. It found that plaintiff prevailed on the factor involving parental guidance and religion, that both parties had the ability to provide the children with basic necessities, but that defendant lacked the disposition to do so and, therefore, plaintiff prevailed on that factor. The trial court further found that the children would gain stability and maintain continuity by staying in plaintiff's Port Huron residence, again favoring plaintiff. It found the parties equal on the factor involving the permanency of a family unit, but found that plaintiff had greater moral fitness, citing evidence that defendant continually accused plaintiff of abuse without support, whereas plaintiff showed a sense of right and wrong that he would impart to the children.

The parties were judged equal in their physical health. The trial court found that the factor involving home, school, and community records favored plaintiff because the evidence showed that defendant was overwhelmed and unable to deal with the older child's anger issues. Plaintiff was judged more willing to facilitate and encourage a close and continuing relationship between the children and the other parent. The trial court cited evidence that plaintiff abided by orders concerning parenting time and made efforts to encourage contact between the children and defendant, whereas defendant did the exact opposite, lodging baseless charges of abuse and ignoring court orders. The trial court noted that defendant engaged in assaultive conduct with respect to plaintiff, sometimes in the children's presence, in finding that the domestic violence factor favored plaintiff. These findings applied the relevant statutory factors, were supported by the record evidence, and thus were not clearly erroneous. The decision awarding sole physical custody to plaintiff was therefore not an abuse of discretion.

We next turn our attention to defendant's challenge to the parenting time portion of the judgment. In particular, defendant argues that the parenting time she received—supervised for two hours per week until further order of the court—was grossly insufficient, and that the trial court should have ordered increased parenting time.

Parenting time should be granted in accordance with the best interests of the child. MCL 722.27a. As previously discussed, trial testimony supported the trial court's findings regarding the best interest factors and the granting of custody to plaintiff. The trial court found particular facts that mitigated against granting defendant greater parenting time, including that defendant continually accused plaintiff of abuse without factual support, that defendant subjected the children to multiple forensic interviews in an effort to bolster her baseless allegations of abuse, that defendant's behavior rendered her "morally unfit" and lacking the disposition to provide proper care for the children, that defendant did little to address the older child's behavioral issues, that defendant actively discouraged a close and continuing relationship between plaintiff and the children, that defendant willfully violated the trial court's parenting time order and hid the children, and that defendant engaged in domestic violence against plaintiff.

Other than to argue that she was justified in reporting the issues to CPS and that she loved and cared for the children, defendant has done little by way of argument to demonstrate that the trial court erred in determining parenting time. Trial evidence supported the factors mitigating against greater parenting time, and the trial court's findings with respect to parenting time were not against the great weight of the evidence. MCL 722.28. Importantly, defendant has not been removed from the children's lives as she has weekly parenting time, and the trial court's order—as it must—left open the possibility that she can be granted more time in the future.

## B. PROPERTY ISSUES

Defendant raises several challenges to the trial court's property decisions. First, she argues that the trial court's property award greatly favored plaintiff, and the inequitable award resulted from the trial court's desire to punish defendant. Within this argument, defendant also takes issue with the trial court's award of partial attorney fees to plaintiff. Second, defendant argues that the trial court lacked the power to order the parties to file joint tax returns for the last two years of their marriage.

## 1. DISTRIBUTION OF MARITAL PROPERTY

In deciding issues on appeal involving division of marital property, this Court first reviews the trial court's findings of fact. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992); *Hodge v Parks*, 303 Mich App 552, 554-555; 844 NW2d 189 (2014). Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous. *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made. *Id*. If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and will be affirmed unless this Court is left with the firm conviction that the division was inequitable. *Sands v Sands*, 442 Mich 30, 34; 497 NW2d 493 (1993).

For the reasons set forth below, we hold that the trial court's findings in connection with the parties' property were not clearly erroneous, and that the trial court's ultimate rulings concerning the division of marital property were fair and equitable.

-6-

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger*, 277 Mich App at 716-717. The division need not be mathematically equal, but any significant departure from congruence must be clearly explained. *Id.* at 717. To reach an equitable division, the trial court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health and needs, fault or past misconduct, and any other equitable circumstance. *McDougal v McDougal*, 451 Mich 80, 89; 545 NW2d 357 (1996); *Sparks*, 440 Mich at 158-160; *Berger*, 277 Mich App at 717. The determination of relevant factors will vary with the circumstances of each case, and no one factor should be given undue weight. "The trial court must make specific findings regarding the factors it determines to be relevant." *Woodington*, 288 Mich App at 363-364.

The trial court's findings regarding property and debt were supported by the evidence and were not clearly erroneous. Plaintiff testified regarding the mortgage and value of the marital home, the parties' three cars, and his retirement account and pension. Plaintiff and Beverly Butler testified regarding a $30,000 outstanding loan to the parties from plaintiff's parents. The trial court awarded the home, which it determined to have no equity, to plaintiff and ordered plaintiff to be responsible for the balance of the $220,000 mortgage. Plaintiff was also made solely responsible for repaying the $30,000 loan owed to his parents, as well as the $6,000 outstanding credit card debt. The trial court awarded plaintiff the 2001 Hyundai and 1995 Explorer while defendant received the 2011 Toyota, each of which carried no debt. The parties each received half of the marital portion of plaintiff's defined contribution plan proceeds, while plaintiff was awarded the full amount of his other retirement account (the court found the marital portion to be worth approximately $24,500 or less), reasoning that plaintiff was made responsible for the bulk of the marital debt.

That distribution does not leave us with a firm conviction that the division was inequitable.[3] Although defendant only received a car, personal property items, and her marital share of plaintiff's defined benefit plan, while plaintiff was additionally awarded the house and the full marital portion of his retirement savings account, plaintiff was saddled with over $256,000 in debt (not including the tax liability he paid), while defendant essentially walked away free from marital debt. Given the property available, this was a fair and equitable distribution. And, the trial court's opinion reflects that in rendering this award it carefully considered and relied upon the appropriate *Sparks* factors, not on any desire to punish defendant.

## 2. ATTORNEY FEES

---

[3] Contrary to her argument, defendant was not denied the opportunity to present evidence or argument concerning marital property and debt. The trial court did not deny her the ability to cross examine plaintiff, as defendant chose not to do so despite several invitations by the trial court. In fact, defendant later called plaintiff in her case in chief, but did not question him regarding the property or debt. She also provided the trial court with listings and arguments concerning property and debt in her written closing arguments, and there is nothing to suggest that "the trial court refused to consider" her closing argument submission.

To the extent that defendant claims that the trial court erred in awarding plaintiff attorney fees, defendant did not include this argument in her statement of questions presented on appeal. Ordinarily, an issue presented in this manner will not be considered. *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 488; 761 NW2d 234 (2008), aff'd 489 Mich 194 (2011). Because the propriety of an attorney fee award is distinctly different from defendant's articulated challenge to the distribution of marital property, the attorney fee issue is not preserved.

In any event, there was no error. The determination of the reasonableness of an attorney fee award is within the trial court's discretion and is reviewed for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008); *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). The trial court ordered both parties to pay attorney fees; plaintiff to pay $2,000, and defendant to pay $1,278.15. The fees that defendant was ordered to pay related to tasks that plaintiff's counsel engaged in as a consequence of defendant's refusal to comply with the trial court's parenting time order, specifically her refusal to return the children to plaintiff's custody in November 2013. See MCR 3.206(C)(2)(b) (allowing attorney fees where a party refuses to comply with a court order). Defendant does not provide any argument challenging the propriety of fees under that court rule, nor does she assert that any part of the fees were not actually related to her refusal to comply with the trial court's order. The trial court acted within its discretion in ordering that defendant pay attorney fees.

### 3. JOINT TAX RETURN

The trial court entered an order amending its divorce judgment, requiring the parties to file amended joint tax returns for tax years 2011 and 2012, stating, in pertinent part:

> [T]he parties shall file amended joint tax returns for the 2011 and 2012 tax year[s], divide any tax refunds equally, and be equally responsible for any tax deficiencies for [those] years. In the event either or both parties received a tax refund(s) as a result of filing separately, the party who received that refund shall be responsible for re-paying that refund from his or her one-half share of the total tax refund, if any, to which the parties would have otherwise have been entitled to had they filed jointly. In the event a refund a party received as a result of filing separately exceeds that party's one-half share of the total joint refund, that party shall pay the other party the difference between the other party's half of the total joint refund (to which the party would have been entitled had they filed jointly) and the refund that was actually received from filing an amended joint tax return. In the event either or both parties incurred and/or paid an income tax deficiency as a result of filing separately, then he or she shall first be reimbursed that deficiency from any joint tax refund(s) before they are divided. The Defendant shall cooperate in the filing and signing of the amended returns for 2011 and 2012.

Defendant argues that the trial court lacked the authority to order her to file amended joint returns, and that she should not have been compelled to sign joint returns under penalty of perjury, as in doing so she would be affirming that the facts plaintiff states on the returns were true.

In considering this issue, we first recall that "Michigan law grants the trial court in a divorce case broad discretion to do equity regarding the disposition of property," so long as it

conforms with *Sparks*. *Licavoli v Licavoli*, 292 Mich App 450, 454; 807 NW2d 914 (2011). See, also, *Beckett v Beckett*, 186 Mich App 151, 153; 463 NW2d 211 (1990) ("The trial court has great discretion in the adjustment of property rights upon divorce."). One could say that when granting a divorce, a circuit court has more discretion to fashion relief than it does on any other case, particularly when addressing the division of property. See *Greene v Greene*, 357 Mich 196, 202; 98 NW2d 519 (1959) (recognizing the trial court's "traditional broad discretion" in divorce cases); *Smith v Smith*, 113 Mich App 148, 150; 317 NW2d 324 (1982) (in divorce cases trial courts have "wide discretion" in dividing property). Indeed, the court's guiding principle in distributing property upon divorce is—within the confines of statutory and case law—to reach the broad goal of "a fair and equitable division in light of all the circumstances." *Beckett*, 186 Mich App at 153.

The parties have not cited to any Michigan law—and we have likewise found none—that addresses whether a trial court can order a party to sign and file an amended joint tax return for a tax year occurring during the marriage. There are Michigan cases highlighting the fact that trial courts often take tax consequences into consideration when fashioning the ultimate equitable distribution of marital property. See, e.g., *Friend v Friend*, 486 Mich 1035; 783 NW2d 122 (2010) (recognizing uniform spousal support orders take into consideration tax consequences of payments); *Clarke v Clarke*, 297 Mich App 172, 188; 823 NW2d 318 (2012) (trial courts can order which parent may claim the federal dependency tax exemption); *Nalevayko v Nalevayko*, 198 Mich App 163, 164; 497 NW2d 533 (1993) (generally recognizing that courts may consider effects of taxation in distributing assets so long as it is not speculative); *Everett v Everett*, 195 Mich App 50, 55; 489 NW2d 111 (1992) ("the trial court erred in valuating stock options without considering tax consequences."). Clearly, then, circuit courts often consider the tax implications in a variety of contexts so as to ensure that it is accurately determining the value of an asset and equitably distributing the marital estate. But it is one thing to take into account the tax consequences that affect the marital estate. It is quite another to force a party to sign a tax filing that comes with potential legal ramifications.

Pursuant to the federal Internal Revenue Code, a spouse has the option to file a joint tax return. 26 USC 6013. It is generally understood that a husband and wife obtain a much more advantageous tax rate when filing a joint tax return. *Bock v Dalbey*, 283 Neb 994, 996-997; 815 NW2d 530 (2012). Along with potential tax benefits, however, comes potential liability for both signers. *Id.*; *Sanders v United States*, 509 F2d 162, 165 (CA 5, 1975). Because of these considerations, and oftentimes because divorcing parties will not agree on anything—let alone what tax forms to file—a court is confronted with the issue raised in this case: in order to gain a tax advantage to one or both parties on income earned during the marriage, with the result likely being additional marital assets available for distribution, does a circuit court have the power to order a party to sign a joint tax return (or an amended one) for the benefit of the marital estate?

Courts from states across the Union that have addressed this issue[4] have come to differing conclusions. Defendant relies in large part on the Nebraska Supreme Court decision in *Bock*. That case involved a marriage dissolution proceeding that included the trial court's division of marital property. At issue was the trial court's order that the parties file joint tax returns for the years 2008 and 2009. The parties filed jointly in 2007, but had not filed any subsequent returns. *Bock*, 283 Neb at 995. The defendant appealed the order, arguing that the trial court did not have the "discretion to order the parties to file a joint return to preserve assets for the marital estate or to equalize its division of the estate." *Id*. at 996. The court cited case law from several other states holding that a trial court cannot compel a party to file a joint tax return. *Id*. at 997 n 10. The *Bock* court particularly relied on *Leftwich v Leftwich*, 442 A2d 139 (DC App, 1982), one of the first courts to hold that in a divorce proceeding a trial court could not override a party's right to select his or her filing status under the Internal Revenue Code:

> To sanction the trial court's effectively ordering a spouse to cooperate in filing a joint return would nullify the right of election conferred upon married taxpayers by the Internal Revenue Code. Such a right is not inconsequential; its exercise affects potential criminal and/or civil liabilities of taxpayers. . . . Married individuals filing a joint return expose themselves to joint and several liability for any fraudulent or erroneous aspect of the return. [*Id*. at 998, quoting *Leftwich*, 442 A2d at 145 (ellipsis in original).]

To foreclose the right to be free from potential liability exposure as a joint filer was unacceptable to the *Leftwich* court, particularly where the trial court—instead of ordering the filing of joint returns—could have remedied any perceived tax disadvantage by altering the disposition of other marital property. See *Bock*, 283 Neb at 998, quoting *Leftwich*, 442 A2d at 146.

The *Bock* court set forth additional policy considerations militating against allowing a trial court to order a party to file tax returns with a specific status (joint or individual). It reasoned that because federal tax courts look at the parties' intent in filing jointly, "a trial court cannot know with certainty whether its equitable division of the marital estate based on consideration of a joint tax return will be given effect by federal authorities or courts" where the parties are compelled to file jointly. *Bock*, 283 Neb at 1000. The *Bock* court also viewed the trial court's order to file joint returns as a mandatory injunction which, under the circumstances, was too harsh a remedy in light of the ability to make up the tax difference through property adjustments. *Id*. Additionally, the court noted that Internal Revenue Code filing deadlines create practical hurdles to a trial court compelling the filing of joint returns, as a joint tax return is not revocable after the passing of the filing deadline. *Id*. at 1003. As a result, the *Bock* court held:

> We conclude that the Court of Appeals erred in holding that a district court has discretion to compel the parties to a marital dissolution proceeding to file a joint income tax return. Because a trial court can equitably adjust its

---

[4] Where there is a lack of controlling Michigan precedent, it is appropriate to look to cases from other jurisdictions for guidance. *Oxley v Dep't of Military Affairs*, 460 Mich 536, 544; 597 NW2d 89 (1999).

division of the marital estate to account for a spouse's unreasonable refusal to file a joint return, resort to a coercive remedy that carries potential liability is unnecessary. [*Id*. at 1004.]

Several other decisions follow *Leftwich* without much additional analysis or rationale. See *Teich v Teich*, 240 AD2d 258; 658 NY2d 599 (1997) (spouse has unqualified right to decide whether to file a joint return, and court can separately address adverse consequences of decision not to file jointly); *In re Marriage of Lewis*, 81 Or App 22, 25; 723 P2d 1079 (1986) (following *Leftwich* without much discussion); *Matlock v Matlock*, 750 P2d 1145, 1145 (Okla App, 1988) (citing to *Leftwich*, court cannot compel filing of joint return, but can take consequences into account when dividing property); *In re Marriage of Butler*, 346 NW2d 45, 47 (Iowa App, 1984), overruled in part on other grounds, *In re Marriage of Hoffman*, 493 NW2d 84 (Iowa App, 1992) (same holding as *Teich*, *Lewis*, and *Butler*). Although *Kane v Parry*, 24 Conn App 307, 315-316; 588 A2d 227 (1991), held without any discussion that a court could not order parties to file a joint tax return in the absence of a prior agreement to do so, it did not rely upon *Leftwich* or its progeny.

As noted earlier in this opinion, other courts have concluded that it is within a trial court's discretion to order a party to sign and file a joint tax return. One of the more frequently cited cases coming to this conclusion is *Bursztyn v Bursztyn*, 379 NJ Super 385; 879 A2d 129 (2005). Though recognizing that "[t]here are good arguments on both sides of the issue," the court ultimately concluded that "trial courts should have discretion to compel the filing of joint tax returns." *Id*. at 397. Considering many of the same factors as the Nebraska Supreme Court did years later in *Bock*, the *Bursztyn* court recognized that because compelling a party to sign and file a joint tax return had some potential adverse tax implications, courts should consider the tax consequences to the marital estate between filing a joint or individual return and, where appropriate, *first* attempt to "compensate the parties for the adverse tax consequences of filing separately." *Id*. at 398. But, if that is not feasible, the court ultimately held that the power to compel exists to "preserve the marital estate by compelling joint returns." *Id*. at 397.

Other courts have held that divorce courts *do* have the discretion to order parties to sign a return, or to amend a return. For instance, in *In re Marriage of Lafaye*, 89 P3d 455, 461 (Colo App, 2003), the court held that the federal tax code does not "deprive the dissolution court of jurisdiction to enter orders as between the parties," and consequently the trial court could preclude the wife from amending joint returns. The Ohio Court of Appeals similarly held that, because a trial court is required by Ohio law to consider the tax consequences of a division of property, a divorce court has the jurisdiction and authority to order a spouse to amend a tax return as part of a property division. *Bowen v Bowen*, 132 Ohio App 3d 616, 636-637; 725 NE2d 1165 (1999). In dicta, the Arkansas Court of Appeals stated that because a trial court in divorce proceedings "may mould any remedy that is justified by the proof," it was within a trial court's discretion to order a party to sign a joint tax return. *Cox v Cox*, 17 Ark App 93, 95; 704 SW2d 171 (1986). And, without too much elaboration, the New Hampshire Supreme Court held that whether to compel the signing of a joint tax return is within a divorce court's discretion. *Wheaton-Dunberger v Dunberger*, 137 NH 504, 511; 629 A2d 812 (1993). Kentucky courts have likewise held it to be a discretionary decision, *Schmitz v Schmitz*, 801 SW2d 333, 336 (Ky App, 1990), while the Minnesota Court of Appeals held that a divorce court has the discretion to

order the parties to file joint tax returns to avoid the depletion of funds available for distribution. *Theroux v Boehmler*, 410 NW2d 354, 356 (Minn App, 1987).

The articulated reasons in support of not affording a trial court the discretion of ordering parties to sign a joint tax return are reasoned and worthy of serious consideration. As we read those cases, none of the courts has concluded that 26 USC 6013 *by itself* precludes a state trial court from taking away the discretion normally given to a married taxpayer by ordering the filing of a joint tax return. Instead, those courts have recognized the federal policy in that statute, and the potential liability consequences attendant to both joint filers. In deference to those concerns, and recognizing that typically a divorce court can make up any detrimental tax consequences resulting from an individual filing through redistribution of the parties' property, those courts held that it is preferable not to allow a court the discretion to order a reluctant spouse to file a joint tax return.

We believe that the *Bursztyn* approach is most consistent with Michigan law and the broad discretion historically afforded to trial judges disposing of marital (and at times, separate) property. As noted, there are no restrictions placed on trial courts by the Michigan Legislature or Michigan courts relative to compelling joint tax returns. And circuit courts in divorce actions, through the exercise of their broad equitable powers, routinely issue orders compelling the parties to do, or refrain from doing, certain actions regarding their personal property. See, e.g., *Kasben v Hoffman*, 278 Mich App 466, 474-475; 751 NW2d 520 (2008) (court can order the transfer of personal property between the parties); *Korth v Korth*, 256 Mich App 286, 293-294; 662 NW2d 111 (2005) (court has equitable power to order the sale or abandonment of dilapidated property); *Yeo v Yeo*, 214 Mich App 598, 602; 543 NW2d 62 (1995) (court has equitable power to compel sale of marital home). Nor, as we just mentioned, have any courts concluded that federal law precludes such an order. Absent any such prohibition, and because tax consequences are routinely considered by Michigan courts when exercising their broad discretion in resolving property issues, we hold that it is within the broad discretion of a trial court to compel a party to sign a joint tax return when, under all the circumstances, it is in the best interests of the marital estate and, as discussed below, there is (1) no ability for the court to make up the difference in tax liability through an allocation of property, (2) there is no history of tax problems with the requesting spouse, (3) the parties have a history of filing joint tax returns during the marriage, and (4) the court orders the spouse (absent an agreement to do so) to indemnify and hold harmless the reluctant spouse for any resulting tax liability. There are several reasons for this holding.

First, like the *Bursztyn* court, we too recognize that there is some potential risk involved to a spouse who signs a joint return. As we have said, the statute itself provides for joint and several liability on any tax deficiencies and other liabilities. *Callaway v Comm'r of Internal Revenue*, 231 F3d 106, 111 (CA 2, 2000) (if a joint return is made, liability with respect to the tax shall be joint and several), citing 26 USC 6013(d)(3). But, somewhat tempering this potential liability is that a spouse compelled to sign a joint return during the course of a divorce proceeding may very well obtain the benefit of the "innocent spouse rule," should any issues arise from the other spouse's filing information. See 26 USC 6015; *Friedman v Comm'r of Internal Revenue*, 53 F3d 523, 528-529 (CA 2, 1995) (recognizing that because innocent spouse rule is remedial in nature, "it is construed and applied liberally in favor of the person claiming its benefits"); *Purcell v Comm'r of Internal Revenue*, 826 F2d 470, 475 (CA 6, 1987) ("The purpose

-12-

of the innocent spouse rule is to protect one spouse from the overreaching or dishonesty of the other"); see also *Manella v Comm'r of Internal Revenue*, 631 F3d 115, 117-118 (CA 3, 2011); *Henson v Comm'r of Internal Revenue*, unpublished memorandum opinion of the United States Tax Court, issued October 10, 2012 (Docket No. 14304-10) (explaining the threshold requirements a spouse must prove to obtain relief under the innocent spouse rule). However, at the time divorce proceedings occur it is generally unlikely that either the parties or the trial court will know if the IRS has determined there to be any tax deficiencies, additional liabilities, etc., with any recent tax filing. So, whether the reluctant spouse would obtain the benefit of the innocent spouse rule could be unclear at the time of entry of the judgment of divorce. But the existence of the rule does in some measure counter the risks of being ordered to sign a joint tax return with a former—or soon to be former—spouse.

Second, in order to protect a reluctant spouse from exposure on any tax deficiencies resulting from the other spouse's information, a trial court should order (absent an agreement between the parties) that the reluctant spouse be indemnified and held harmless by the other spouse. See, e.g., *In re Marriage of Lafaye*, 89 P3d at 461. In this way the reluctant spouse can know with certainly that no additional funds will be required to satisfy the other spouse's desire to file jointly.

Finally, as almost all the courts addressing this issue have noted, and it is just as true here in Michigan, trial courts adjudicating a divorce are already empowered to shift marital (and in some cases, separate) property and debt between the parties in order to reach a fair and equitable result. In many cases *where there is property available* to address potential tax deficiencies resulting from an individual filing, it will be more practical[5] to make up the tax difference by providing additional property to the spouse who has to make up the tax liability difference resulting from filing an individual return. *Bursztyn*, 379 NJ Super at 398.

As a result, and in light of all the foregoing considerations, the general default rule is for a court to redistribute the property at its disposal to make up any additional tax liability incurred as a result of an individual filing. But, if that is not possible because of insufficient property available for the court to make up for the additional taxes or because of some other exceptional circumstance, as a last resort a trial court has the discretion to order the signing of a joint tax return. In other words, compelling a party to sign a joint tax return should be limited to cases (1) where the parties do not have sufficient assets available for the court to shift in order to make up the difference in tax liability, (2) where there is no history of tax problems with the other spouse, (3) where the parties have a history of filing joint tax returns during the course of the marriage, and (4) the parties either agree, or the court orders, that the reluctant spouse be indemnified and held harmless by the other spouse for any tax liability. *Id*. at 398-399.

Turning now to the decision in this case, we conclude a remand is necessary for the trial court to reconsider its decision ordering defendant to sign amended joint tax returns. Defendant has argued that she should not have been compelled to sign the amended joint returns because of

---

[5] Practical in the sense of being less complicated, without potential adverse tax implications, and providing finality to the distribution of property.

-13-

the risk of future liability.  Although some level of risk exists until such time as a return is accepted by the IRS, the limited record does not contain evidence that plaintiff had prior tax problems, that he has or had any intention to engage in tax fraud, or that he otherwise exhibited an inability to have a proper tax return prepared.  Additionally, there appears to be little marital property to divide between the parties, so the trial court may be limited in its ability to make up any tax deficiency without taking it directly from defendant.  But the record is not sufficient for us to make any conclusions, and this decision is in the first instance one relegated to the trial court's discretion.  Accordingly, we vacate that portion of the judgment ordering defendant to sign amended joint tax returns, and remand this issue to the trial court for reconsideration in light of the factors outlined in this opinion.

## C.  SPOUSAL SUPPORT

Defendant also takes issue with the trial court's decision not to award her spousal support at the conclusion of a seven-year marriage.  On appeal, the trial court's factual findings regarding spousal support are reviewed for clear error.  *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012).  If the trial court's findings are not clearly erroneous, this Court must then decide whether the dispositional ruling was fair and equitable in light of the facts, *Sparks*, 440 Mich at 151-152; *Loutts*, 298 Mich App at 26, or constituted an abuse of discretion, *Woodington*, 288 Mich App at 355.  An abuse of discretion occurs (except, as noted, in custody decisions) when the result is outside the range of reasonable and principled outcomes.  *Id.*  The trial court's decision regarding spousal support will be affirmed unless this Court is firmly convinced that it was inequitable.  *Sparks*, 440 Mich at 152; *Berger*, 277 Mich App at 727.

An award of spousal support is in the trial court's discretion.  *Loutts*, 298 Mich App at 25.  A strict formula is not used and the award should reflect what is just and reasonable under the circumstances of the case.  *Id.* at 30.  Among the factors a trial court should consider are:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity.  [*Id.* at 31 (quotation marks and citations omitted).]

Factual findings regarding the relevant factors are necessary.  *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010).

The trial court considered those factors, stating:

> The parties were married in October of 2007 and separated in August of 2012.  They have filed for divorce and separated in the past.  In total, they have been married slightly more than six (6) years, a marriage of short duration.  Both parties are in good health and are able to work.  As recently as late 2012[,] Defendant earned $18 per hour working for Home Depot, a position she left

-14-

voluntarily in February of 2013. Defendant stated in earlier court filings that, before she married Plaintiff, she earned $47,000 per year. She is currently paid $12 per hour and anticipates she will be paid more (which she will be negotiating) when she manages her employer's racetrack in Ohio. Her landlord (who is also her employer) recently reduced her monthly rent. Upon entry of the Judgment of Divorce, Defendant will have a car that is free and clear and will carry little, if any, debt. Beyond basic living expenses, her only continuing monthly obligation will be child support.

In the judgment of the Court, Defendant should not be awarded spousal support. That issue, as to both parties, will be forever barred.

The trial court's findings on these points were not clearly erroneous and its dispositional ruling was within the range of reasonable and principled outcomes. The trial testimony revealed that defendant was employed, healthy, and pursuing further education. She had a fully-paid-for mode of transportation and reasonably priced housing. As late as 2012, she had earned $18 per hour in a slightly less than full time position. She had little debt under the divorce judgment, while plaintiff was responsible for virtually all the marital debt. The parties had a relatively short-term marriage. The trial court acted within its discretion in denying defendant's request for spousal support, as it was a reasonable and principled outcome under these facts.

## D. CHILD SUPPORT

For her next argument defendant attacks the method used by the trial court in calculating her child support obligation. Generally, this Court reviews child support orders for an abuse of discretion, *Fisher v Fisher*, 276 Mich App 424, 427; 741 NW2d 68 (2007), which as with our consideration of spousal support, occurs when the outcome is not within the range of principled outcomes, *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007). The determination of whether a trial court has operated within the statutory framework for child support calculations is a question of law reviewed de novo. *Peterson v Peterson*, 272 Mich App 511, 516; 727 NW2d 393 (2006).

Contrary to defendant's argument, the trial court did not err in referring the matter of child support to the Friend of the Court for computation. During the January 21, 2014 post-trial hearing, the trial court stated that it would be referring the matter of child support to the Friend of the Court. In its opinion, the trial court stated the bases for its calculation of support:

> The Court has reviewed the testimony of Defendant concerning her employment history, past rates of pay, her current employment, and her current rate of pay. Plaintiff's 2013 W-2 form is now available.

> Defendant shall pay support for the two (2) minor children, effective July 29, 2013, using the following incomes: For Defendant, 1099 income of 40 hours per week at the rate of $12 per hour; for Plaintiff, his 2013 W-2 income.

These circumstances do not evidence an improper delegation of authority to the Friend of the Court. MCL 552.505(h) provides that one of the duties of the Friend of the Court is to make written reports and recommendations regarding child support based on bureau-developed

formulas. Here, the trial court was simply utilizing that service, supplying the necessary figures to fit into the then-mechanical computation. The Friend of the Court performed the computation and generated a recommendation. The trial court entered its final child support order on May 27, 2014, and the trial court acted within its discretion in following this procedure.[6]

## E. RECUSAL

The final argument presented for our resolution is whether the trial court should be recused from any further post-judgment proceedings. Before trial, defendant moved for the trial court's recusal, but the trial court—and on appeal the chief judge of the circuit court—denied the motion.

The factual findings underlying a ruling on a motion for disqualification are reviewed for an abuse of discretion, while application of the facts to the law is reviewed de novo. *Cain v Dep't of Corrections*, 451 Mich 470, 503 n 38; 548 NW2d 210 (1996); *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009). An abuse of discretion occurs when the decision is outside the range of reasonable and principled outcomes. *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009).

Based on our complete review of the record, we hold that the trial court did not err in denying defendant's motion to disqualify the trial judge. MCR 2.003 provides the following grounds for disqualifying a judge:

(C) Grounds.

(1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

(a) The judge is biased or prejudiced for or against a party or attorney.

(b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

(c) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding.

---

[6] The trial court did not impute income to defendant. Defendant testified at trial that she was employed, making $12 an hour, working 24 to 32 hours a week, and expected her hours to increase. The trial court's opinion stated that child support was based on defendant earning $12 an hour, working 40 hours a week. Given defendant's trial testimony, the trial court's determination was within the range of principled outcomes.

(d) The judge has been consulted or employed as an attorney in the matter in controversy.

(e) The judge was a partner of a party, attorney for a party, or a member of a law firm representing a party within the preceding two years.

(f) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has more than a de minimis economic interest in the subject matter in controversy that could be substantially impacted by the proceeding.

(g) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person;

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have more than de minimis interest that could be substantially affected by the proceeding; or

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

A trial judge is presumed to be unbiased, and the party moving for disqualification bears the burden of proving that the motion is justified. *Mitchell*, 296 Mich App at 523; *Coble v Green*, 271 Mich App 382, 390; 722 NW2d 898 (2006).

The record does not support defendant's argument that the trial court held such personal disdain for defendant that it could not be unbiased in the event of a remand. The trial court has authority to manage proceedings to achieve orderly disposition of cases. MCL 600.611; *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). The trial court's comments to defendant during trial comported with that authority. That the trial court told defendant, for example, that she could not read a statement in place of cross examining Babin, did not indicate bias on the part of the trial court. The trial court repeatedly instructed defendant that she could cross examine witnesses or present additional evidence. To the extent that defendant chose not to do so, defendant's decisions regarding how to present her case does not indicate bias. Notably, the court provided defendant a month between the close of plaintiff's case in chief and the start of defendant's case in which to secure new counsel if defendant so chose.

Insofar as defendant argues that the court was biased because it ruled against defendant's interests several times during the proceedings below, a party cannot establish disqualification based on bias or prejudice merely by repeated rulings against the party, even if the rulings are erroneous, *In re Contempt of Henry*, 282 Mich App at 680; *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001). Also, defendant intentionally violated the

-17-

court's parenting order, hid the children from plaintiff, and refused to appear for a show cause hearing. On these facts, that defendant was found in contempt and was ordered to jail does not indicate bias.

The parties agreed that the trial court would select a person to perform mental health examinations of the parties if the parties were unable to agree on an examiner. The parties came to a stalemate and the court informed them that she had contacted an examiner. The trial court informed the parties that she was going to contact the proposed therapist and at that time no one objected. The trial court's actions showed no bias or impropriety.[7]

## III. CONCLUSION

For the foregoing reasons, we vacate that portion of the judgment of divorce ordering defendant to sign amended joint tax returns, and remand for the trial court to reconsider this issue under the principles articulated in this opinion. In all other respects we affirm. No costs are awarded, neither party prevailing in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ William C. Whitbeck
/s/ E. Thomas Fitzgerald

---

[7] Defendant cites no authority for her contention that the trial court's Facebook "friendships" established a level of disqualifying bias. Once the issue was raised the court deleted the two "friend" designations, and informed the parties that she could handle the case in an unbiased fashion, and it is presumed to be so. *Mitchell*, 296 Mich App at 523.