# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT P. GYORKE,

      Plaintiff-Appellee,

v

SHELLY B. GYORKE,

      Defendant-Appellant.

UNPUBLISHED
April 25, 2017

No. 330375
Wayne Circuit Court
Family Division
LC No. 14-110624-DM

Before: SAWYER, P.J., and SAAD and RIORDAN, JJ.

RIORDAN, J. (*concurring*).

At first glance, it appeared that defense counsel's persuasive oral argument could carry the day. However, after further review of the record, I agree with the majority that the trial court did not err when it failed to award defendant half of the $38,000 "refund." I write separately to clarify my understanding of the underlying question in this appeal and to note several additional reasons that support the majority's conclusion.

The core issue in this case is whether the parties modified defendant's tax liability for the first three quarters of 2015 through the status quo provisions of the divorce settlement agreement. The parties advocate opposite answers to this question on appeal. Plaintiff essentially argues that defendant agreed, under the settlement agreement signed in August 2015, to remain jointly liable for the parties' tax liability for the duration of the status quo order, despite the fact that she would be considered divorced for all of 2015 for tax purposes if they divorced at any point in 2015. Defendant essentially argues that she never was liable for the amount paid for first quarter estimated taxes in April 2015 based on divorce-related tax laws, meaning that she is entitled to half of the overpayment or "refund" that was applied to the first quarter estimated taxes.

As defendant emphasizes on appeal, the parties' accountant unequivocally testified that the overpayment or "refund" from the 2014 tax payment only benefited plaintiff in the end given his sole liability, following the divorce, for the taxes related to his income in 2015. While I may agree with defendant under different circumstances, defendant's position fails given the language of the status quo order and the undisputed calculations and reasoning behind plaintiff's combined payment of the parties' 2014 tax liability and first quarter estimated taxes.

-1-

The parties' settlement agreement clearly provided that plaintiff and defendant were to continue to pay incurred expenses until the status quo provision expired. Specifically, the settlement agreement states the following under the "Financial Status Quo" heading: "The financial status quo shall continue through September 30, 2015; *any and all expenses accrued through said date shall be paid*. The following credit cards shall be paid off in full: Community Choice Visa credit card, United Mileage Visa, Delta Sky Miles card; any joint cards shall be closed upon payment." (Emphasis added.) Later, under the "Property Settlement" heading, the settlement agreement provides, "The balances in the marital bank accounts shall be equally divided between the parties, *once all financial status quo expenses are paid*. Husband shall provide the updated 'tox' [sic] bank account monthly statement for [the] past six (6) months within 30 days of Judgment." (Emphasis added.) Accordingly, pursuant to the settlement agreement, the parties were authorized to pay any expenses incurred, consistent with the financial status quo, through September 30, 2015, using the marital bank accounts, after which time the marital accounts would be divided. Notably, at the November 2015 trial, defendant's attorney expressly acknowledged that plaintiff "could keep making estimated [quarterly] payments" under the status quo provision.[1]

In *Butler v Simmons-Butler*, 308 Mich App 195, 211-222; 863 NW2d 677 (2014), this Court discussed the tax liability of divorcing parties and how tax consequences may influence the terms of a divorce settlement agreement or a trial court's division of property. This Court noted that married couples have the option of filing a joint tax return, and "[i]t is generally understood that a husband and wife obtain a much more advantageous tax rate when filing a joint tax return." *Id*. at 213. However, both spouses are jointly and severally liable for the tax owed in conjunction with a joint return. 26 USC 6013(d)(3); *Butler*, 308 Mich App at 219.

Here, in light of these considerations, it is apparent that plaintiff and defendant agreed to maintain the financial status quo of quarterly estimated tax payments—which had been made in conjunction with the parties' prior filings of joint tax returns, presumably to secure a more advantageous tax rate and to avoid penalties—when they entered into a settlement agreement that maintained the financial status quo until September 30, 2015. See *id*. at 213. As such, even though plaintiff and defendant would not be able to reap the benefits of a joint tax return for the tax year in which they divorce, 26 USC 6013(g)(4)(C), it appears that both parties agreed to remain jointly liable, in effect, for the tax liability incurred through the end of the financial status quo order, regardless of the fact that plaintiff was the sole wage-earner. Stated differently, since the parties historically made quarterly estimated payments related to their joint tax return, it appears that defendant agreed to remain jointly liable for the taxes incurred during the first quarter of 2015, consistent with the status quo, since the financial status quo provision remained in effect until September 30, 2015, several months later.

---

[1] Additionally, an ex parte temporary custody and financial status quo order entered on September 29, 2014, states, "IT IS ORDERED that pending this matter, and while the parties continue to reside together with the minor children, they shall continue to maintain the financial status quo in the maintenance of the marital estate and household expenses, until further order." The trial court also entered an ex parte property injunction on that date.

Initially, I was persuaded by defense counsel's written and oral argument that plaintiff's request for an extension constituted a violation of the status quo order, or otherwise made it possible for him to obtain an inequitable benefit from an overpayment of the parties' 2014 tax liability. However, there is no evidence in the record supporting defendant's claim that plaintiff's filing of an extension violated the status quo order or constituted "divorce planning." It is undisputed that defendant never *saw* a prepared tax form until August 2015, but plaintiff testified below that he only filed the extension because defendant never responded to his request to sign the 2014 tax return. Defendant never rebutted this testimony or proffered evidence identifying another reason for the extension. As a result, the only evidence in the record concerning this issue indicates that plaintiff filed for an extension solely because defendant had failed to respond or cooperate with plaintiff's communication regarding the tax filing. To the extent that defendant suggests that this was not the actual reason for the extension, that was a matter of credibility for the trial court, and "[w]e defer to the trial court's credibility determinations given its superior position to make these judgments." *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). Thus, for all of these reasons, I am not convinced that plaintiff's filing of an extension can be viewed as a "violation" of the status quo on plaintiff's part or an event that entitled defendant to a greater share of the marital property.

Further, and most importantly, defendant fails to recognize on appeal that the application of the $38,000 overpayment or "refund" to the first quarter estimated taxes had no practical effect on the division of marital property. Although plaintiff technically made an overpayment for the 2014 taxes, which was then applied to the 2015 first quarter estimated payment, the accountant's undisputed testimony clarifies the circumstances of the "overpayment." In reality, plaintiff did not make an overpayment that was unexpected and inconsistent with the status quo. Instead, for simplicity's sake, the parties' accountant suggested that plaintiff write a combined check in April 2015 for the amount owed by the parties for their 2014 taxes and the first quarter estimated taxes for 2015, as those payments were due at the same time. The accountant's testimony plainly indicates that the same amount would have been withdrawn from the marital account for the first quarter estimated payment if the overpayment or "refund" resulting from the combined check had not been applied. Put another way, it is undisputed that plaintiff would have made a separate payment of approximately $38,000 for the first quarter estimated taxes from the marital estate in April 2015 if he had not simply paid for the parties' 2014 taxes and the first quarter estimated taxes for 2015 all at once.

In sum, the record shows that plaintiff's filing of an extension for the parties' 2014 taxes and his combined payment of the parties' 2014 tax liability and estimated taxes for the first quarter of 2015 had no practical effect on the share of the marital estate that would ultimately be distributed to defendant. Because marital funds, regardless of their form, would have been used to pay the first quarter estimated tax payment—consistent with the status quo—defendant has failed to demonstrate that the trial court erred when it denied her request for half of the 2014 tax "refund."

For all of these reasons, I agree with the majority.

/s/ Michael J. Riordan

-3-