*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAUL SANFORD ISHEL,

Plaintiff/Counterdefendant-Appellant,

v

ASHLEY NICOLE FLOYD-ISHEL,

Defendant/Counterplaintiff-Appellee,

and

EDIE FLOYD,

Intervenor.

UNPUBLISHED
April 4, 2024

No. 360720
Wayne Circuit Court
Family Division
LC No. 20-110984-DO

Before: GARRETT, P.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

In this divorce action, plaintiff appeals as of right the judgment of divorce distributing his and defendant's property. We affirm.

## I. FACTUAL BACKGROUND

This case arises from a divorce between plaintiff-husband and defendant-wife. The parties were married in 2015, and plaintiff filed for divorce in December 2020.

At trial, plaintiff and defendant stipulated to the distribution of all assets and liabilities of the marital estate except for the marital home and a second home. During their marriage, they purchased two homes together. Defendant and plaintiff bought the first home, the marital home, in 2017, and both of their names were on the deed and mortgage. The second home that defendant and plaintiff purchased together was located directly next door to the marital home. The second

home previously had been owned by Edie Floyd,[1] defendant's mother. In 2012, Edie and defendant's father entered into a land contract for the second home, and they paid about $1,700 in monthly payments. After defendant's father passed away in 2014, Edie fell behind on about nine payments on her land contract. To make payments on the home, Edie was forced to liquidate some of her assets, and her son, Austin Floyd, sold a significant portion of his business assets. Austin and his family then moved into the second home to save on expenses and help Edie afford the home.

Sometime after Austin and his family moved into the second home with Edie, Edie approached defendant and discussed having defendant purchase the home. Defendant testified, "we [plaintiff and defendant] thought it would be in [Edie's] best interest for us to use our good credit, to make sure that she was secure in her home, next door." Defendant, plaintiff, and Edie then entered into a purchase agreement whereby defendant and plaintiff would purchase Edie's interest in the second home and pay off the original land contract. Defendant and plaintiff bought the second home in March 2018, where Edie, Austin, and Austin's family still reside. The second home was then titled to both defendant and plaintiff. To purchase the second home, defendant and plaintiff acquired a loan for $39,000, secured by a mortgage, to pay off the outstanding balance of the original land contract. Both defendant's and plaintiff's names were on the mortgage. Edie then made all loan payments herself; defendant and plaintiff did not contribute to the loan payments.

Later, defendant learned that an additional $16,000 was due at the closing on the home as a down payment. Edie then gave defendant $16,000 to "cover all the closing costs, and down payment." Defendant testified that neither she nor plaintiff "put any money in" at closing. When asked why Edie gave her the down payment money to buy the home, defendant responded, "Because the house [was not] meant to be ours [defendant and plaintiff]. This was her, using her money, to keep her home, just using our name for credit."

Concerning the second home, defendant and plaintiff never made a house payment, never paid property taxes, never paid for home insurance, and never paid for improvements out of pocket. Defendant testified that the parties never considered the second home to be an investment home, nor did they plan to make any financial gain from the home. Defendant also stated that plaintiff never declared to anyone, "prior to the divorce, that he was the owner of the house and [Edie] [did not] have any ownership interest."

A few months later, Edie wanted to renovate the second home to add more room since both Edie and Austin's family were living in the home. In September 2018, defendant and plaintiff refinanced the second home and acquired another loan, secured by a second mortgage, to finance the renovations. Both parties' names were on the refinanced mortgage. Defendant and plaintiff received about $60,000 after the refinancing and second mortgage, which they then deposited into

---

[1] In May 2021, Edie Floyd filed a motion to intervene in the case. The trial court added Edie as an intervenor in July 2021. In December 2021, the trial court dismissed Edie's claims with prejudice. Edie is not involved in this appeal, and thus, we do not address her lower-court claims.

their joint bank account for Edie to use on the renovations. Edie continued to pay all of the loan payments after the refinancing and second mortgage.

Plaintiff testified that, concerning improvements made on the second home, Edie made all payments to the various contractors. Plaintiff also helped Edie put down new flooring in the second home after some flooding occurred and installed new shelves in the kitchen. However, Edie paid for the materials.

The trial court issued its opinion after trial outlining the distribution of the parties' property. As is relevant, the trial court first awarded defendant the marital home and ordered her to refinance the home, remove plaintiff's name from the home, and pay plaintiff for half of the equity. Regarding the second home, the trial court determined that "Edie Floyd gave the property to her daughter, and her daughter included plaintiff in the transaction, under the assumption that the parties would remain married." It was undisputed that plaintiff did not pay for "any of the costs associated with the down-payment, financing, or closing on the property." Additionally, while plaintiff's name was included on the title and both mortgages, he "did not disclose this property on his Financial Affidavit Disclosure indicating that he knew, at least in the outset of this case, that he did not consider this his joint property." Further, unlike defendant, plaintiff testified that he "expended very little effort to obtain the [second] property." Regarding plaintiff's improvements to the second home, the trial court found that plaintiff simply "did nominal projects as would be expected for a son-in-law to help his widowed mother-in-law." Ultimately, the trial court concluded that the purchase of the second home "was a poor attempt at estate planning that subsequently went very wrong when [plaintiff] and [defendant] filed for divorce." Thus, the trial court awarded the second home to defendant as her separate property.

## II. SECOND HOME AS DEFENDANT'S SEPARATE PROPERTY

Plaintiff argues that the trial court erred when it found that the second home was defendant's separate property and not part of the marital estate. We disagree.

We "review[] a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous." *Butler v Simmons-Butler*, 308 Mich App 195, 207-208; 863 NW2d 677 (2014). A trial court's finding is clearly erroneous if we are "left with the definite and firm conviction that a mistake was made." *Id*. at 208. "The dispositional ruling is discretionary and will be affirmed unless this Court is left with a firm conviction that the division was inequitable." *Id*.

"Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "[S]eparate assets may lose their character as separate property and transform into marital property if they are comingled with marital assets and treated by the parties as marital property." *Id*. (quotation marks and citation omitted). However, the fact that "property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." *Id*. at 201-202. Further,

separate property may be included in the remainder of a marital estate if "the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party." *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997) (quotation marks and citation omitted). Thus, the invasion of separate property is proper when the "division of the marital assets alone would have been insufficient for suitable support in the manner to which the [parties] were accustomed." *Id*. "The actions and course of conduct taken by parties are the clearest indicia of whether property is treated or considered marital, rather than separate property." *Cunningham*, 286 Mich App at 209.

In this case, while the second home was jointly titled to defendant and plaintiff, and both of their names were on the loans secured by the mortgages, the course of conduct and testimony taken by the parties established that the second home was defendant's separate property. Although plaintiff was a titled owner of the second home, he did not contribute any of his own finances in maintaining or renovating the home. Additionally, the funds from the second loan were deposited into a joint bank account on Edie's behalf. Plaintiff never communicated that Edie no longer had an ownership interest in the second home, and he never claimed ownership of the home during his discussions with the family. Further, plaintiff was not involved in the improvement of the second home other than a few minor projects, such as installing kitchen shelves and repairing a bedroom floor, both of which were financed by Edie. Likewise, he did not assist Edie or Austin either physically or financially with the major renovations to the second home.

Conversely, Edie approached defendant alone to purchase the second home and discussed with her the intention for defendant to own the home until Edie felt "more secure" in her finances. Defendant and plaintiff did not consider the second home to be a joint investment home, nor did they plan to make any financial gain from the home. Further, Edie provided defendant with closing costs, which defendant deposited into her individual account. Defendant also assisted Edie in designing and decorating the second home. Defendant and plaintiff gave Edie the money from the second loan that was deposited in their joint bank account to use for the second home's renovations. Edie herself made all loan payments on both mortgages; neither plaintiff nor defendant helped pay for any of the loan payments. Plaintiff also did not disclose the home on his financial disclosure affidavit, which suggests that he did not consider the second home his property at the time. Thus, we conclude that the evidence at trial shows that the parties never intended that the second home belong to both plaintiff and defendant, and instead, they intended that the second home be considered defendant's separate property to hold for Edie until she could become financially stable. Such a conclusion is supported by the parties' actions and course of conduct. Further, plaintiff was awarded 50% equity in the marital home, and did not contribute his own funds in maintaining or improving the second home. As such, plaintiff also failed to establish invasion through need or contribution.

To summarize, we agree with the trial court that the actions and conduct taken by plaintiff and defendant regarding the second home show that both parties regarded the home not as joint property, but as defendant's separate property to be held until Edie could regain ownership of it. See *Cunningham*, 286 Mich App at 209. Therefore, we conclude that the trial court did not clearly err when it determined that the second home was defendant's separate property.

### III. FAIR AND EQUITABLE DISTRIBUTION OF PROPERTY

Plaintiff argues that the award of the second home to defendant was a "windfall," and thus, the trial court's division of property was not fair or equitable. We disagree.

If the trial court's factual findings are upheld, we must then "determin[e] whether the dispositional ruling was fair and equitable in light of the facts." *Olson*, 256 Mich App at 622. "[T]he ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable." *Sparks v Sparks*, 440 Mich 141, 152; 485 NW2d 893 (1992). Additionally, we "defer[] to a trial court's findings of fact stemming from credibility determinations." *Cassidy v Cassidy*, 318 Mich App 463, 477; 899 NW2d 65 (2017).

Once a court has determined what property is marital, it must then divide the marital estate between the parties "to reach an equitable division in light of all the circumstances." *Byington v Byington*, 224 Mich App 103, 114; 568 NW2d 141 (1997). "While each spouse need not receive a mathematically equal share, any significant departures from congruence must be explained clearly by the court." *Welling v Welling*, 233 Mich App 708, 709; 592 NW2d 822 (1999). The trial court must consider the following factors in determining an equitable distribution of property in a divorce proceeding:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Cassidy*, 318 Mich App at 477 (quotation marks and citation omitted).]

In the matter before us, the ultimate division of property was fair and equitable. The trial court explicitly considered all the factors in its opinion after trial. The trial court found that the five-year marriage was a "short[-]term marriage." Additionally, plaintiff "expended very little effort to obtain the [second home]" and "did nominal projects that would be expected for a son-in-law to help his widowed mother-in-law." For example, plaintiff installed kitchen shelves and helped Edie replace her bedroom's flooring when there was flooding from a leak at the second home. The trial court also acknowledged that neither party "indicated any significant health problems" and that both defendant and plaintiff "worked during the marriage and earned similar incomes." Further, the trial court found that defendant "convincingly testified" that plaintiff began taking steroids during the marriage, and as a result, he suffered a significant personality change. Plaintiff was then awarded 50% equity in the marital home, and defendant was awarded the second home. The trial court acknowledged the confusing nature of the sale of the second home, and the fact that Edie's name never was added back to the title was a "poor attempt at estate planning that subsequently went very wrong when [plaintiff] and [defendant] filed for divorce." Thus, the trial court properly assessed all relevant factors concerning the exclusion of the second home as marital property. Additionally, we agree with the trial court that plaintiff "made no credible argument for invasion through need or contribution." We also agree with the trial court that the sale of the second home to defendant and plaintiff was "an unsophisticated estate planning technique" following the death of Edie's husband, and that defendant nominally assumed ownership over Edie's home solely to "help her retain the home she had shared with her late husband." Finding no clear error in the trial court's factual findings, we conclude that the dispositional ruling was fair and equitable in light of these facts.

## IV.  CONCLUSION

There were no errors warranting relief.  Accordingly, we affirm.

/s/ Kristina Robinson Garrett
/s/ Michael J. Riordan
/s/ Anica Letica