*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLIE DALTON DAVIS,

        Plaintiff-Appellee,

v

ELISE CATHRYN SCHNUPHASE,

        Defendant-Appellant.

UNPUBLISHED
July 28, 2022

No. 359356
Lapeer Circuit Court
LC No. 21-054773-DC

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

In this custody action, defendant appeals as of right the trial court's judgment awarding the parties joint legal and physical custody of the minor child, and awarding them equal parenting time. For the reasons set forth in this opinion, we affirm.[1]

## I. BACKGROUND

This appeal involves a custody dispute between plaintiff and defendant over their infant daughter. The child was less than two months old when plaintiff, the child's father, filed this action in July 2021. Plaintiff requested joint legal and physical custody of the child, and equal parenting time.

---

[1] We reject plaintiff's argument that this Court lacks jurisdiction to consider defendant's challenge to the trial court's temporary parenting-time orders and the court's discovery rulings. The trial court's November 2, 2021 judgment is not a "final order" under MCR 7.202(6)(a)(iii), as that rule only applies to postjudgment custody orders. Instead, the judgment is the first order that fully adjudicates the parties' custody dispute. As such, it qualifies as a final order under MCR 7.202(6)(a)(i), and it is not subject to the limitation in MCR 7.203(A)(1) for appeals from an order described in MCR 7.202(6)(a)(iii)-(v). Defendant is free to raise on appeal issues related to any of the trial court's prior orders. *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992).

The parties were never married. Defendant and the child initially lived with plaintiff and his family, but shortly after the child's birth, defendant and the child moved out of plaintiff's family's home and moved into the home of defendant's parents. Both parties continued to reside with their own parents throughout the proceedings. While the matter was pending, the trial court granted plaintiff's motion for temporary parenting time. Defendant opposed the motion, principally arguing that the child would not be safe in plaintiff's care because of his unstable mental health, he had difficulty controlling his anger, he refused to take his medication, and his family owned an aggressively dangerous dog. Defendant requested that she be awarded sole physical custody of the child and that plaintiff's parenting time be supervised pending a psychological evaluation and drug testing, and that plaintiff be ordered to attend parenting and anger-management classes. The trial court awarded plaintiff temporary parenting time, initially supervised but then unsupervised, pending an evidentiary hearing to determine issues of custody and parenting time.

The custody hearing was scheduled for October 8, 2021. On September 17, 2021, defendant filed a motion to adjourn the custody hearing so that she could conduct further discovery. In particular, defendant requested an opportunity to conduct further discovery regarding plaintiff's mental health issues. In support of her motion, defendant relied on voluminous exhibits in the form of text messages, Facebook and Instagram postings, which she maintained demonstrated plaintiff's difficulties controlling his anger, his depression, anxiety, suicidal thoughts, and his drug use. Defendant also alleged that plaintiff recently purchased a large and aggressive snake, and that plaintiff refused to restrain the snake and the family dog when the child was in his home, which reflected his emotional immaturity and inability to make good choices in the child's best interests.

The trial court reviewed plaintiff's responses to defendant's first set of interrogatories and determined that plaintiff sufficiently responded to defendant's questions and requests. The court denied plaintiff's motion to adjourn the custody hearing and denied the motion for further discovery, but ordered plaintiff to provide defendant with an unredacted copy of his medical information from McLaren Oakland Family Medicine, which he did.

Following a two-day custody hearing in October 2021, the trial court awarded the parties joint legal and physical custody of their child, and equal parenting time. On appeal, defendant makes several challenges to the trial court's judgment.

## II. DISCOVERY OF PLAINTIFF'S MEDICAL INFORMATION

Defendant first raises a series of issues related to the trial court's denial of her requests for further discovery of plaintiff's mental health information and refusal to adjourn the custody hearing to permit the additional discovery.

A trial court's decision to grant or deny discovery is reviewed for an abuse of discretion. *Micheli v Mich Auto Ins Placement Facility*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356559); slip op at 3. A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. "A trial court necessarily abuses its discretion when it makes an error of law." *Id*. (citation omitted). To the extent that defendant argues that the trial court's decisions regarding discovery violated her right to due process, this Court reviews

such an issue de novo. *In re Sangster*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 352147); slip op at 4, lv pending; *Upper Peninsula Power Co v Village of L'Anse*, 334 Mich App 581, 591; 965 NW2d 658 (2020).

MCR 2.314 provides, in pertinent part:

**(A) Scope of Rule**.

(1) When a mental or physical condition of a party is in controversy, medical information about the condition is subject to discovery under these rules to the extent that

(a) the information is otherwise discoverable under MCR 2.302(B), and

(b) the party does not assert that the information is subject to a valid privilege.

(2) Medical information subject to discovery includes, but is not limited to, medical records in the possession or control of a physician, hospital, or other custodian, and medical knowledge discoverable by deposition or interrogatories.

(3) For purposes of this rule, medical information about a mental or physical condition of a party is within the control of the party, even if the information is not in the party's immediate physical possession.

\* \* \*

**(C) Response by Party to Request for Medical Information**.

(1) A party who is served with a request for production of medical information under MCR 2.310 must either:

(a) make the information available for inspection and copying as requested;

(b) assert that the information is privileged;

(c) object to the request as permitted by MCR 2.310(C)(2); or

(d) furnish the requesting party with signed authorizations in the form approved by the state court administrator sufficient in number to enable the requesting party to obtain the information requested from persons, institutions, hospitals, and other custodians in actual possession of the information requested.

(2) A party responding to a request for medical information as permitted by subrule (C)(1)(d) must also inform the adverse party of the physical location of the information requested.

MCR 2.311 addresses the physical and mental examination of parties, and provides, in pertinent part:

**(A) Order for Examination**. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician (or other appropriate professional) or to produce for examination the person in the party's custody or legal control. The order may be entered only on motion for good cause with notice to the person to be examined and to all parties. The order must specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and may provide that the attorney for the person to be examined may be present at the examination.

The thrust of defendant's arguments is that she was precluded from obtaining discovery of plaintiff's medical records. Defendant asserts that plaintiff failed to sign a medical authorization, which prevented her from adequately investigating his mental health issues and circumvented her from calling an expert witness regarding mental health issues, thereby undermining her right to due process. The record does not support defendant's assertions.

The record reflects that plaintiff did respond to defendant's interrogatories and requests for production of documents. In response to a request to name the medical professionals who plaintiff treated with for his mental health issues, and the facilities he had visited, plaintiff disclosed that he had seen Dr. Cohen at McLaren Oakland Family Medicine, and he provided Dr. Cohen's contact information. Plaintiff also disclosed when he first saw Dr. Cohen, that he was diagnosed with a mood disorder, and that he was taking Cymbalta and Lamictal to treat his mood disorder. While plaintiff did not also sign an attached medical authorization form to allow defendant to obtain his medical records from Dr. Cohen, plaintiff had already disclosed the office note from Dr. Cohen in which Dr. Cohen stated that plaintiff was diagnosed with a mood disorder, was doing well otherwise, and was capable of parenting the child without limitations or restrictions. Moreover, the trial court ordered—and plaintiff produced—an unredacted copy of his medical record from McLaren Oakland Family Medicine. Thus, plaintiff's failure to sign the medical authorization did not prevent defendant from obtaining plaintiff's medical records from Dr. Cohen. Further, as the trial court found, it also did not prevent defendant from calling Dr. Cohen as a witness, or from calling any other witness who could testify regarding mental health issues in support of defendant's case.

The record also does not support defendant's suggestion that plaintiff intentionally withheld information during discovery, either in response to defendant's first set of interrogatories or the two subpoenas that defendant issued. Plaintiff testified that he did not receive any mental health therapy and only consulted with Dr. Cohen, who diagnosed his mood disorder and prescribed medication. That information was provided to defendant.

Despite defendant's argument to the contrary, the record does not support defendant's assertion that her right to due process was in any way undermined by the trial court's decisions to deny (1) defendant's motion to adjourn the custody hearing, (2) defendant's oral motion to compel discovery, or (3) defendant's oral motion for clarification of these rulings. Defendant had ample time throughout the proceedings to seek discovery regarding plaintiff's medical information. She was also afforded a great deal of latitude to question plaintiff and members of his family about plaintiff's mental health treatment. Plaintiff never asserted privilege to any requested information,

-4-

he acknowledged having been diagnosed with a mood disorder for which he was prescribed medication, and he stated that he only sought treatment from Dr. Cohen, who provided an opinion regarding plaintiff's ability to parent the child. Under these circumstances, we are not persuaded that defendant's due process right was undermined in any manner.

## III. PARENTING TIME AND CUSTODY

Defendant also argues that the trial court erred by awarding plaintiff temporary parenting time without first holding an evidentiary hearing to consider the existence of an established custodial environment, and without considering the necessary statutory factors. Defendant also challenges the trial court's factual findings with respect to several of the best-interest factors in MCL 722.23, its determination that the child did not have an established custodial environment with either parent, and its decision to award the parties joint legal and physical custody of the child, with equal parenting time. We find no error warranting reversal.

## A. STANDARDS OF REVIEW

MCL 722.28 provides:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

Therefore, in a child-custody action, this Court applies three different standards of review. The trial court's findings of fact are reviewed under the great-weight-of-the-evidence standard. *Merecki v Merecki*, 336 Mich App 639, 644; 971 NW2d 659 (2021). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id.* at 645 (citation omitted). This Court defers to a trial court's determination of credibility. *Demski v Petlick*, 309 Mich App 404, 445; 873 NW2d 596 (2015). The trial court's ultimate custody determination is reviewed for an abuse of discretion. *Merecki*, 336 Mich App at 645. A court abuses its discretion in a custody action when the result " 'is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias.' " *Id.*, quoting *Butler v Simmons-Butler*, 308 Mich App 195, 201; 863 NW2d 677 (2014). Any questions of law are viewed for clear legal error, which occurs if the trial court incorrectly chooses, interprets, or applies the law. *Merecki*, 336 Mich App at 645.

Likewise, with respect to parenting-time decisions,

> [o]rders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue. [*Luna v Regnier*, 326 Mich App 173, 179; 930 NW2d 410 (2018), quoting *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010) (quotation marks and citation omitted).]

Consistent with these deferential standards, a trial court's findings regarding the existence of an established custodial environment should be affirmed unless the evidence clearly preponderates in the opposite direction. *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019).

Defendant's unpreserved issue regarding the trial court's authority to enter temporary parenting-time orders after the parties signed and filed an acknowledgment of parentage (AOP) is reviewed for plain error affecting substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). As explained in *Rivette*:

> " 'To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights.' " [*Id.* at 328-329, quoting *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2008), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).]

## B. TRIAL COURT'S AUTHORITY TO ENTER TEMPORARY PARENTING TIME ORDERS

Initially, defendant claims that because the parties executed an AOP, she had sole physical and legal custody of the child by operation of law. MCL 722.1006, which is part of the Acknowledgment of Parentage Act (APA), MCL 722.1001 *et seq.*, addresses the impact of an AOP on a child's custody, stating:

> After a mother and father sign an acknowledgment of parentage, the mother has initial custody of the minor child, without prejudice to the determination of either parent's custodial rights, until otherwise determined by the court or otherwise agreed upon by the parties in writing and acknowledged by the court. This grant of initial custody to the mother shall not, by itself, affect the rights of either parent in a proceeding to seek a court order for custody or parenting time.

Although defendant correctly observes that she initially was entitled to custody of the child after the AOP was signed, the AOP itself was not the equivalent of a judicial grant of custody and it did not affect plaintiff's right to file an action for custody or parenting time. Indeed, in *Foster v Wolkowitz*, 486 Mich 356, 366; 785 NW2d 59 (2010), the Court recognized that "nothing in the plain language of the [APA] equates the execution of an AOP to a judicial determination regarding custody; rather, the statutory language [of MCL 722.1006] leads to the opposite conclusion." Equating an AOP to a judicial determination of custody would be prejudicial to the father because the Child Custody Act, MCL 722.1 *et seq.*, does not allow the trial court to modify an existing order that would disrupt a child's established custodial environment unless the modification is shown by clear and convincing evidence to be in the best interests of the child. *Foster*, 486 Mich at 366 n 19. Any conclusion that an AOP amounts to a judicial determination of custody would be inconsistent with the statutory directive in MCL 722.1006, because it would subject the father to a heightened evidentiary standard applicable when a party seeks to modify or amend an initial grant of custody. *Id.* Therefore, the filing of the AOP did not affect plaintiff's evidentiary burden in pursuing custody or parenting time of the child. See *Sims v Verbugge*, 322 Mich App 205, 215; 911 NW2d 233 (2017) (recognizing that the plaintiff's legal custody of the child acquired by way of an AOP "was granted by operation of law, [and was] not a judicial determination").

We acknowledge that a trial court is required to conduct a hearing and consider the best-interest factors in MCL 722.23 when a modification of parenting time will result in a change of custody, even on a temporary basis. *Yachcik v Yachcik*, 319 Mich App 24, 51; 900 NW2d 113 (2017). However, the trial court was not modifying any custody determination because the filing of an AOP did not amount to a judicial determination of the child's custody. Defendant's reliance on *Shade*, 291 Mich App at 26, is misplaced. In *Shade*, this Court explained that if a modification in parenting time will not disrupt a child's established custodial environment, the standards set forth in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003), to determine the existence of proper cause or a change of circumstances, are not applicable. *Shade*, 291 Mich App at 26-27. Here, the trial court's decision to award temporary parenting time to plaintiff, first supervised and later unsupervised, did not result in an alteration of the child's custody or disruption of her established custodial environment. This is particularly true given the child's young age and that defendant had primary physical custody pending trial. See also MCR 722.27(1)(e).

## C. ESTABLISHED CUSTODIAL ENVIRONMENT

With respect to defendant's argument that the trial court erred by finding that the child did not have an established custodial environment with either party, MCL 722.27(1)(c) provides, in pertinent part:

> The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

Defendant argues that the child had an established custodial environment only with her because the child had lived with her since birth, she took the child to medical appointments, she bathed, fed, and comforted the child, and the child was more bonded with her.

In determining that the child did not have an established custodial environment with either party, the trial court considered that the child was still an infant (two months old at the time this case was filed), the short duration of time that she lived with both of her parents, as well as the fact that the child's relationship with plaintiff was interfered with when defendant would not allow him to have parenting time for a short period after the parties separated until the trial court entered its order on July 21, 2021. Considering the child's young age and the alterations in the child's custodial environment during the relatively short period between her birth and the trial court's custody determination, the trial court did not clearly err by finding that there was not an appreciable time in which the child looked to either party for guidance, discipline, the necessities of life, and parental comfort. MCL 722.27(1)(c).

## D. THE BEST-INTEREST FACTORS OF MCL 722.23

Defendant next challenges several of the trial court's best-interest findings under MCL 722.23.

Child-custody disputes are to be resolved by determining a child's best interests through a weighing of the statutory best-interest factors outlined in MCL 722.23(a)-(l). *Demski*, 309 Mich App at 446. The trial court found that best-interest factors (f) and (g) favored defendant, that factor (l) slightly favored defendant, that factor (j) favored plaintiff, and that factor (i) was not applicable because the child was too young to express a preference. The court weighed the remaining statutory factors equally in favor of both parties. On appeal, defendant challenges the trial court's findings regarding factors (b), (c), (e), and (j).

The trial court held that factor (b), "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any," equally favored both parties, finding that both parties have "the capacity and disposition to give the child love, affection." The trial court observed that although plaintiff "has not had as much opportunity" to spend time with the child, it found that the child was thriving and having parenting time with plaintiff. The court also found that defendant was Christian, but noted that the child was only an infant and that plaintiff had testified that he would not interfere with the child being raised in the Christian faith.

Defendant challenges the trial court's findings with regard to Factor (b) by questioning plaintiff's ability "to make good choices" for the child, and contends that the evidence showed that defendant was more mature than plaintiff, that defendant is in good mental and physical health, and that there were no moral issues regarding her ability to parent the child. Defendant asserts that, conversely, the evidence showed that plaintiff is more immature, has a mood disorder, has low self-esteem and has had suicidal thoughts, uses drugs, is unable to hold a job, did not financially support the child until ordered by the court, and has significant anger issues. Although we may have agreed with defendant had we been sitting as the trial court, under the more deferential appellate standard, we conclude that the evidence did not clearly preponderate against the trial court's finding that plaintiff had the capacity and disposition to give the child love, affection, and guidance.

We acknowledge that evidence was presented that plaintiff was diagnosed with a mood disorder, had struggled with anger issues, had experienced suicidal thoughts, and had made several questionable postings on Facebook and Instagram. On one occasion, plaintiff displayed a firearm to another person in an apparent incident of road rage. However, the evidence did not suggest that plaintiff posed a threat of real and serious harm to the child. Plaintiff described the child as "the greatest baby" and expressed his excitement about her first tooth coming in. Plaintiff wanted more time to bond with the child and he requested equal parenting time with her so that he and his family could do so. Plaintiff also recounted that when the child spends time with him and his family, they hung out as a family watching television, playing, and changing diapers.

Plaintiff was amenable to raising the child in the Christian faith as defendant wished. In spite of challenges with his own upbringing, plaintiff was excited when the child was born, and he looked forward to being a constant and stable presence in her life. Plaintiff also testified that he and the child shared a very close bond, the child knew him as her father, and he explained that the child brings him a sense of peace and calmness when he is with her. Plaintiff's sister, Charlotte,

also described plaintiff as a good father, and his brother Randal similarly testified that plaintiff had found the joy of his life when the child was born. In sum, the evidence supports the trial court's conclusion that plaintiff was capable of and had the disposition to give the child love, affection, and guidance. The evidence does not clearly preponderate against the trial court's finding that this factor equally favored both parties.

Factor (c) considers "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court found that both parties were able to provide for the child. The court observed that defendant was "furthering her education in cosmetology," and while she was earning less than plaintiff at the time of trial, she would obtain her licensure within the next year and had the ability to provide for the child. Similarly, plaintiff was earning approximately $27,000 annually, and therefore, the trial court concluded that "both parties have the financial ability to care for the child."

Defendant criticizes the trial court for not acknowledging that (1) defendant has been the child's "sole provider," (2) plaintiff's unwillingness to pay child support without a court order, and (3) plaintiff's inability to hold down a secure job. The evidence did show that since the parties separated in June 2021, defendant had financially supported the child, while plaintiff had not paid any child support because a court order requiring payment of child support was not in place. Plaintiff also testified that he was terminated from his job at a car wash 18 months before trial, was fired from a pizza establishment in 2016, and left his employment at Southern Trucking Equipment after a year. At the time of trial, however, plaintiff was working at Natural Way and earning approximately $27,000 annually, and he had received a promotion. Plaintiff also paid for the child's medical insurance. Plaintiff admitted that he was not paying child support at the time of trial, stating that he had not been ordered to do so. But considering his current employment and the medical insurance he had been providing for the child, the trial court's finding that plaintiff had the capacity and disposition to provide the child with food, clothing, and medical care was not against the great weight of the evidence.

Factor (d) considers "the length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The trial court acknowledged that both parties were living with their parents "in stable, satisfactory, good environments, good homes," and that the child had resided in both homes. Accordingly, the trial court weighed factor (d) equally between the parties. Addressing related factor (e), "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes[,]" MCL 722.23(e), the trial court found that this factor did not favor either party because both parties had "maturity issues," but because they both were residing in "good stable homes" with their parents, they both had "backup there," which the court determined was important.

In challenging the trial court's finding regarding Factor (e), defendant complains that the trial court did not adequately consider the "permanency" of the parties' family homes, but only considered the "acceptability" of their homes. As an initial matter, the trial court ordered that both parents were to remain living in their respective parents' home for at least one calendar year, and informed the parties that if they were to leave their parents' homes, the court may consider that a change of circumstances, or proper cause to revisit its custody and parenting-time determinations. It is clear that the trial court carefully balanced the child's need for permanence in her family unit

with the reality that both parties were very young, and that as they grow, mature, and form new relationships, the child's custodial homes may be altered. Thus, we disagree with defendant's assertion that the trial court, like the court in *Fletcher v Fletcher*, 447 Mich 871, 884; 526 NW2d 889 (1994), improperly focused on the "acceptability" of the parties' homes, as opposed to their permanence. Whereas in *Fletcher*, the trial court focused on whether either parent "would offer acceptable custodial homes," the court in the present case, to the extent that it noted that both parties lived in "good stable homes," did so only in the context of explaining that the facts supporting its findings under factor (e) were similar to the facts supporting its findings under factor (d). The court also emphasized the significance of each party having "backup" in caring for the child, which it ruled "will be part of my order, that they have that backup in place and continue to keep that backup in place."

Factor (j) addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent[,]" but precludes the court from considering negatively for the purposes of this factor "any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent." MCL 722.23(j).

Defendant argues that the trial court's findings regarding factor (j) are "overwhelmingly contrary to the great weight of the evidence." The thrust of her argument is that she presented ample evidence demonstrating that plaintiff had struggled with mental health and anger issues, he used drugs, he beat his own dog, and he once displayed a firearm during an altercation with another driver. As defendant acknowledges, MCL 722.23(j) expressly provides that "[a] court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent." At trial, defendant explained that she initially limited plaintiff's access to the child after the parties separated because of her concerns about plaintiff's drug use, emotional and verbal abuse, anger issues, and how he spoke about himself with self-hate and references to suicide posted on social media. And significant evidence was presented regarding the angry manner in which plaintiff would speak in his text-message exchanges with defendant, the questionable statements that he posted on social media, and that he once displayed a firearm at another driver. Therefore, to the extent that the trial court *faulted* defendant for taking the child away from plaintiff, and not working with him as the two began to co-parent the child, the trial court's consideration of this factor contravened MCL 722.23(j), which precluded the court from considering negatively defendant's reasonable action to protect herself and he child from the threat of domestic violence. Accordingly, we are persuaded that the trial court erred by weighing factor (j) in favor of plaintiff.

In sum, while the trial court erred in its consideration of factor (j), we are not otherwise persuaded by defendant's other challenges to the trial court's findings regarding the best-interest factors, or her argument that the trial court abused its discretion by awarding the parties joint legal and physical custody of the child and equal parenting time.

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello