*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JADE M. BISHOP,

                Plaintiff-Appellee,

v

JAMES D. TAYLOR,

                Defendant-Appellant.

UNPUBLISHED
May 21, 2025
3:16 PM

No. 373010
Washtenaw Circuit Court
LC No. 23-000994-DS

Before: MARIANI, P.J., and MALDONADO and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right the trial court order granting sole legal custody of his minor children, JMBT and JMB, to plaintiff, the children's mother. Defendant argues on appeal that the trial court erred by determining that best-interest factors MCL 722.23(c) (capacity to provide for material needs), MCL 722.23(j) (willingness to encourage close relationship between children and the other parent), and MCL 722.23(k) (domestic violence), weighed in plaintiff's favor and that the trial court abused its discretion by failing to consider joint custody and ways to facilitate joint custody. We affirm.

## I. BACKGROUND

The parties never married or lived together, and their two children have lived with plaintiff since the children were born.

The Washtenaw County prosecutor initiated child support proceedings against defendant for the parties' first child, JMBT, after which the trial court established defendant's parentage and ordered defendant to pay child support. The trial court also awarded the parties joint legal custody of JMBT and awarded defendant nonovernight parenting time three days each week.

The parties' second child, JMB, was born approximately 10 months later. Shortly after, the prosecutor initiated the instant case seeking child support from defendant for JMB. The trial court eventually entered a default judgment against defendant, establishing defendant's parentage, ordering defendant to pay child support, and awarding plaintiff sole legal and physical custody of

-1-

JMB.[1]  Subsequently, the trial court issued a notice of contempt on the basis that defendant had failed to pay child support in JMB's case.  Defendant then moved the trial court to establish defendant's paternity of JMB and to obtain joint legal and physical custody of both children, alleging a change in circumstance, i.e., that defendant had been denied parenting time and overnight stays.

In response to defendant's motions, plaintiff requested that the trial court modify JMBT's custody to award plaintiff sole legal custody, alleging a change of circumstances, i.e., that defendant regularly delegated his duties regarding the children's healthcare, daycare, school, and extracurricular activities.  The trial court referred the case to a Friend of the Court (FOC) referee regarding the issues of legal custody, parenting time, and child support.  At about the same time, the parties reached an interim consent agreement regarding parenting time and agreed to use the platform AppClose to communicate regarding the children.  Defendant also was ordered to complete an affidavit of parentage regarding JMB.

The FOC referee interviewed both parties separately via Zoom.  The referee analyzed each of the best-interest factors outlined in the Child Custody Act of 1970, MCL 722.21 *et seq*., and determined that plaintiff was favored under five of the factors considered and that the parties were equally favored under the other five factors considered.  The referee then recommended that plaintiff be awarded sole custody of both children, that defendant receive parenting time every Sunday, that the parties spend holidays with the children according to a specific schedule, and that the parties continue to communicate using AppClose.

Defendant filed an objection to the referee's recommendations, essentially arguing that the referee's assessments of him were untrue or unfair and suggesting that the parties be awarded joint custody, with equal parenting time.  Plaintiff objected separately and regarding only the holiday parenting-time schedule on the basis that defendant did not celebrate any holidays.  The parties reached a consent agreement on parenting time, and the trial court scheduled an evidentiary hearing regarding custody.  Following the evidentiary hearing, the trial court awarded plaintiff sole legal custody of both children.

This appeal followed.

## II.  BEST-INTEREST FACTORS

### A.  LEGAL FRAMEWORK

The Child Custody Act governs the resolution of custody disputes in Michigan.  *Mauro v Mauro*, 196 Mich App 1, 4; 492 NW2d 758 (1992).  The purpose of the Act is to promote the best interests and welfare of children, and courts must construe it liberally to serve that purpose.  See MCL 722.26(1); *Frame v Nehls*, 452 Mich 171, 176; 550 NW2d 739 (1996).  In its custody determination, a trial court must evaluate, consider, and determine the "sum total" of the 12 best-interest factors listed in MCL 722.23.  *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544

---

[1] The trial court also ordered that the children's separate cases be consolidated under the instant case number and that the joint custody provisions regarding JMBT remain in effect.

(2020). The trial court must consider each factor and explicitly state its findings and conclusions regarding each one. *Spires v Bergman*, 276 Mich App 432, 443; 741 NW2d 523 (2007). However, a court is not required to give equal weight to all the factors; it may consider the relative weight of the factors as appropriate to the circumstances. *Maier v Maier*, 311 Mich App 218, 226-227; 874 NW2d 725 (2015).

Defendant challenges only the trial court's findings as to Factors (c), (j), and (k).

## B. STANDARDS OF REVIEW

All child custody orders must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the trial court committed a palpable abuse of discretion, or the trial court made a clear legal error on a major issue. MCL 722.28. Accordingly, then, the statute "distinguishes among three types of findings and assigns standards of review to each. Findings of fact are to be reviewed under the 'great weight' standard, discretionary rulings are to be reviewed for 'abuse of discretion,' and questions of law for 'clear legal error.' " *Fletcher v Fletcher*, 447 Mich 871, 877; 526 NW2d 889 (1994). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Butler v Simmons-Butler*, 308 Mich App 195, 201; 863 NW2d 677 (2014). Finally, "[a] trial court commits legal error when it incorrectly chooses, interprets or applies the law." *Id*.

## C. FACTOR (c)

Defendant argues that the trial court overemphasized defendant's child support arrearage and underemphasized defendant's emotional and relational contributions to the children's care. Likewise, he argues, the trial court considered only defendant's financial situation, but disregarded plaintiff's financial status as a student without consistent income. We disagree.

Factor (c) is the "capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 222.23(c).

In the present case, the trial court found that this factor favored plaintiff on the basis that plaintiff had been providing for the children's food, clothing, and housing. In contrast, defendant's child support payments had been "rare and inconsistent," such that defendant had an arrearage of over $10,000. The record amply supports this determination. Plaintiff earned a master's degree, was employed part-time, and was looking for full-time work in her field. In the meantime, plaintiff supplemented her income with student loans, public assistance, and some financial support from her family. Defendant worked as a barber "full time," which, for him, was approximately 20 hours each week; he did not have a disability that prevented him from working more. As of the day before the custody hearing, defendant owed $10,508 in past-due child support payments.

Moreover, the record supports that the trial court assessed the financial capacities of both parties. In its written order, the trial court specifically found that plaintiff "had to take out additional student loans to provide for the children's material needs. [Defendant] may not earn

-3-

enough as a barber to pay support but is capable of working in other fields and therefore has the ability to meet his support obligation." Therefore, the trial court addressed plaintiff's financial situation, in addition to defendant's earning capacity and child support arrearage.

Additionally, the trial court did not rely solely on financial considerations because the court found that plaintiff was solely responsible for selecting medical providers. Moreover, the court found that defendant attended only 7 out of 27 medical appointments and just 1 dental appointment, and that his unexplained objections to vaccinations caused delays in care.

These findings are supported by the record. Plaintiff picked medical providers, scheduled appointments, and picked up prescriptions for the children. She also presented a record of defendant's attendance at only 7 out of 27 in-person medical visits. Plaintiff also testified that she honored defendant's request to delay vaccinations and ordered books for her and defendant to enable them to research the issue. However, defendant "never looked into any of it," so plaintiff eventually moved forward with the vaccinations, which caused defendant to stop participating in medical appointments, attending "very rarely" or "seldomly." Defendant denied causing a problem with the children getting vaccinated, testifying that he just wanted time to research the issue. However, defendant admitted that he "wasn't able to get around to" reading the books that plaintiff purchased; he "skimmed them" and "did some side research," but he "didn't look too much into it." Accordingly, the trial court's findings regarding Factor (c) are not against the great weight of the evidence. See *Pennington*, 329 Mich App at 570.

Defendant's argument that the trial court disregarded defendant's "substantial emotional and relational contributions" is not relevant to the trial court's analysis of Factor (c), which addresses the children's "material needs." MCL 222.23(c). Nevertheless, the trial court did consider defendant's emotional and relational contributions to the children as part of the court's findings regarding Factor (a), which addresses the "love, affection, and other emotional ties existing between the parties involved and the child." MCL 222.23(a). Regarding this factor, the trial court determined that "[b]oth parties here clearly feel love and affection for their child, and I do find them equal on that factor." Defendant did not dispute this finding on appeal, nor does this finding prejudice defendant. Still, the trial court's decision regarding Factor (a) was not against the great weight of the evidence, in light of the parties' loving testimonies regarding their relationships with their children. See *Pennington*, 329 Mich App at 570.

## D. FACTOR (j)

Defendant argues that the trial court improperly focused on how defendant treated plaintiff, rather than the quality of defendant's parenting. Moreover, defendant had consistently been willing to coparent, but plaintiff excluded defendant from critical parenting decisions, such as medical care and daycare. We disagree.

Factor (j) focuses on the "willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parent." MCL 722.23(j).

In the present case, the trial court determined that this factor slightly favored plaintiff:

[Plaintiff] has tried to facilitate a relationship between [defendant] and the children and has tried to involve [defendant] in making decisions for the children's benefit. [Plaintiff] has never vetoed positions taken by [defendant] and has not cut him off. However, the correspondence admitted into evidence shows that [defendant] would cut off communication with Plaintiff when he was upset with her. [Defendant] also regularly used the children as a tool to try to re-establish a relationship with [plaintiff] and shifted conversations about the children into conversations about the parties' relationship.

Plaintiff testified that she never excluded defendant from decision-making, which the trial court found credible. In addition, plaintiff tried to encourage the children to have a strong relationship with defendant by "constantly asking [defendant] to be there;" "including him;" and making him aware of "pretty much everything," such as doctor's appointments, library story times, and family holiday celebrations. In spite of plaintiff's efforts, however, defendant's participation was "very inconsistent."

Defendant, in contrast, would withdraw from plaintiff and the children for days at a time when he was angry or frustrated. And defendant sometimes would fail to pick up the children after the parties had argued. Defendant also used the parenting communication platform AppClose to ask to take plaintiff out. When plaintiff rebuffed him, defendant indicated that he was no longer willing to make changes to their parenting-time schedule to accommodate her emergencies. Defendant denied that his communications with plaintiff reflected an interest in pursuing a romantic relationship and insisted that he was only being cordial. However, we give special deference to the trial court's credibility assessments, which in this case favored plaintiff. See *Brown v Brown*, 332 Mich App 1, 9; 955 NW2d 515 (2020). Accordingly, defendant has not established that the trial court's determinations regarding this factor are against the great weight of the evidence. See *Pennington*, 329 Mich App at 570.

## E. FACTOR (k)

Defendant asserts that his communication with plaintiff regarding their relationship should not result in this factor slightly favoring plaintiff. We disagree.

Best-interest Factor (k) requires the trial court to consider "domestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). The Child Custody Act does not define "domestic violence." However, for the purposes of analyzing Factor (k), this Court has accepted the definition of "domestic violence" in the Domestic Violence Prevention and Treatment Act, MCL 400.1501 *et seq. Brown*, 332 Mich App at 11-12. That definition provides:

> (d) "Domestic violence" means the occurrence of any of the following acts by an individual that is not an act of self-defense:
>
> (*i*) Causing or attempting to cause physical or mental harm to a family or household member.

(*ii*) Placing a family or household member in fear of physical or mental harm.

(*iii*) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.

(*iv*) Engaging in activity toward a family or household member that would cause a reasonable individual to feel terrorized, frightened, intimidated, threatened, harassed, or molested.  [MCL 400.1501(d).]

In turn, "family or household member" includes "[a]n individual with whom the person has a child in common."  MCL 400.1501(e)(*vi*).

In this case, the trial court found that plaintiff was slightly favored under Factor (k) because, although there was "no significant record of domestic violence," the trial court was concerned about "coercive control." Neither the Child Custody Act nor the Domestic Violence Act define "coercive control."  In describing its concern regarding coercive control, the trial court determined that defendant used the communication platform AppClose to inquire whether plaintiff was dating and used the children to try to pull plaintiff back into a relationship with him. Defendant also disappeared when he was mad at plaintiff, and when plaintiff did not respond the way defendant wanted, "he cut her off and was manipulative."

The record supports these findings.  As discussed, plaintiff testified that if defendant was angry with her, particularly regarding the parties' difference in parenting styles or the child support litigation, defendant would stay away from the children for days at a time.  Similarly, after the parties argued, defendant would arrive late to pick up the children or fail to come, causing plaintiff to be late for work or miss work altogether.  And, as noted, the AppClose messages support that defendant used the platform to communicate about the parties' relationship.  Accordingly, we conclude that the trial court did not abuse its discretion by determining that this factor slightly favored plaintiff.  See *Butler*, 308 Mich App at 201.

## III.  JOINT CUSTODY

Defendant argues that trial court abused its discretion when it refused to consider joint custody, mediation, or coparenting counseling as alternatives to awarding plaintiff sole custody. We disagree.

If either parent requests joint custody, the trial court must consider it.  See MCL 722.26a(1); see also *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008); *Shulick v Richards*, 273 Mich App 320, 326; 729 NW2d 533 (2006).  The court must determine whether joint custody is in the children's best interests by examining the best-interest facts stated under MCL 722.23, see MCL 722.26a(1)(a), and by determining whether the "parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child," MCL 722.26a(1)(b).

In this case, defendant moved the trial court for a change in custody, seeking joint custody of both children.  After assessing the best-interest factors, the trial court found that the parties were not able to communicate effectively regarding the children because of defendant's pattern of

coercive control. More specifically, the trial court found that when defendant got upset with plaintiff, he stopped communicating or showing up. As discussed, the record supports these findings. Accordingly, the trial court did not abuse its discretion when it determined that joint custody was not appropriate. See *Brown*, 332 Mich App at 8. Therefore, contrary to defendant's argument on appeal, the trial court did not fail to consider joint custody. Rather, as noted, the trial court *did* consider joint custody, and ruled against it.

Defendant cites no authority supporting his remaining argument that the trial court should have considered alternatives to joint legal custody or ways to facilitate joint legal custody. Defendant did not raise this argument in the trial court. Accordingly, we review this issue for plain error affecting substantial rights. See *Marik v Marik*, 325 Mich App 353, 358; 925 NW2d 885 (2018). In pertinent part, MCL 722.26a(1) provides: "In custody disputes between parents, the parents shall be advised of joint custody." There is no similar requirement for the trial court to advise the parties of alternatives or facilitation methods, much less a requirement to consider those things. Therefore, the trial court's failure to consider mediation, counseling, or some other structured communication tool did not constitute plain error. See *Marik*, 325 Mich App at 359.

IV. CONCLUSION

The trial court's factual findings regarding Factors (c), (j), and (k), were not against the great weight of evidence, and accordingly, the court did not abuse its discretion when granting sole legal custody to plaintiff. Likewise, the trial court did not fail to consider joint custody, and the trial court's failure to consider alternatives to joint custody did not constitute plain error.

Affirmed.

/s/ Philip P. Mariani
/s/ Allie Greenleaf Maldonado
/s/ Adrienne N. Young

-7-