*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JILLIAN T. CLARK,

        Plaintiff-Appellee,

v

RICHARD H. CLARK,

        Defendant-Appellant.

UNPUBLISHED
July 14, 2025
2:45 PM

Nos. 366151; 367121
Oakland Circuit Court
LC No. 2021-505969-DM

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

In these consolidated appeals, in Docket No. 366151, defendant appeals as of right from the parties' judgment of divorce. In Docket No. 367121, defendant appeals by delayed leave granted[1] the trial court's May 30, 2023 order referring him to an anger management course. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

These consolidated appeals arise from the parties' lengthy and contentious divorce proceedings which culminated in an April 6, 2023 judgment of divorce. The parties were married on August 19, 2005, and their marriage produced three children: a daughter, KC, 13 years of age, and two sons, MC, 10 years of age, and JC, 8 years of age, at the time of the parties' divorce. During the parties' marriage defendant worked as a bankruptcy and foreclosure attorney and plaintiff was a stay-at-home mother. The contentious nature of these proceedings started at the very beginning, and included issues surrounding the parties' finances. On March 24, 2021, the trial court entered an ex parte financial status quo order requiring the parties, consistent with their

---

[1] *Clark v Clark*, unpublished order of the Court of Appeals, entered November 9, 2023 (Docket No. 367121). In this order, this Court consolidated the cases on its own motion under MCR 7.216(A)(7).

past practices, to maintain the financial status quo that they had practiced before the filing of the divorce action.

After extensive pretrial motion practice and a 12-day combined bench trial and evidentiary hearing, the trial court issued a 207-page opinion and order containing its factual findings and legal conclusions. By the time the evidentiary hearing and bench trial concluded, plaintiff had returned to the workforce and was working on a contract basis as a speech and language pathologist. On April 6, 2023, the trial court entered the parties' divorce judgment, which, as relevant to these appeals, ordered defendant to pay $1,430 in child support for the three children, as well as spousal support of $3,300 for 90 consecutive months. Because defendant was in arrears with respect to status quo payments that accrued during the course of the proceedings, the trial court ordered defendant to pay plaintiff approximately $1,390 a month until he had paid the total arrearage of $34,314, as well as the gross spousal award in the amount of $71,436.33.

As part of the conditions of summer parenting time, defendant was ordered to enroll in therapy geared toward anger management, and to provide written verification regarding court-ordered therapy and anger management to the court not less than one week before the review hearing date. At a review hearing held on May 22, 2023, the trial court referred defendant to a court-approved anger management course after defendant informed the trial court that he had been unable to enroll in any of the other court-approved anger management courses because of the availability of the courses and fees. The trial court entered an order to that effect on May 30, 2023.

Shortly before entry of the parties' judgment of divorce, the trial court granted plaintiff's request to require defendant to post a bond for security each time he filed a motion with the trial court. In its order requiring defendant to post a $1,000 bond for any motions or pleadings, the trial court reasoned that the bond was necessary because defendant had repeatedly filed duplicative, meritless, and harassing pleadings and briefs that the trial court determined were filed for the dilatory purpose of delaying entry of the judgment of divorce. Following entry of the judgment of divorce, defendant filed an ex parte request seeking to proceed with a motion to modify child and spousal support without posting security under MCR 2.109. Defendant asked the trial court to waive the requirement that he file a $1,000 security bond in support of his motion on the basis of his "extreme lack of funds." In his attached motion to modify child and spousal support, defendant asserted that his circumstances had materially changed since the uniform child and spousal support orders were entered. Plaintiff did not file a response to the motion. The trial court issued its opinion on April 27, 2023, in which it denied defendant's motion. The trial court specifically noted that it "felt compelled" to impose the $1,000 security bond because of the repeated pleadings and briefing that defendant had filed that were violative of the court rules. Also, after considering the circumstances raised by defendant, the trial court noted that there had not been a material change in either party's financial circumstances since the entry of its support orders and the judgment of divorce in April 2023.

## II. EX PARTE REQUEST TO PROCEED WITH MOTION TO MODIFY CHILD AND SPOUSAL SUPPORT WITHOUT POSTING SECURITY

Defendant first argues that the trial court abused its discretion in denying his ex parte request to proceed with his motion to modify child and spousal support without first posting security.

## A. STANDARDS OF REVIEW

This Court reviews the trial court's decision to require a bond for an abuse of discretion. *In re Surety Bond for Costs*, 226 Mich App 321, 331; 573 NW2d 300 (1997). The trial court's factual assessments regarding the legitimacy of the underlying claims and the party's financial ability to post bond are reviewed for clear error. *Id*. at 333. The trial court will have clearly erred if this Court is left with the definite and firm conviction that the trial court made a mistake, even if evidence was presented to support the trial court's finding. *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). If the trial court's decision falls outside of the range of reasonable and principled outcomes, its decision will amount to an abuse of discretion. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Because the issues presented require determining the legitimacy of defendant's arguments seeking to modify child and spousal support, we are also mindful of the standards of review for a trial court's decision on these motions. In reviewing a trial court's decision on a matter of spousal support, the trial court's findings of fact are reviewed for clear error. *Butler v Simmons-Butler*, 308 Mich App 195, 222; 863 NW2d 677 (2014). If this Court determines that the trial court's factual findings were not clearly erroneous, then this Court must next determine whether its dispositional ruling was "fair and equitable in light of the facts," or whether it amounted to an abuse of discretion. *Id*. When the trial court's decision falls outside the range of reasonable and principled outcomes, its decision will amount to an abuse of discretion. *Id*. at 223. Likewise, this Court reviews the trial court's decision on a motion to modify child support for an abuse of discretion. *Weaver v Giffels*, 317 Mich App 671, 678; 895 NW2d 555 (2016).

## B. LEGAL BACKGROUND

The relevant court rule, MCR 2.109, provides, in pertinent part:

> **(A) Motion**. On motion of a party against whom a claim has been asserted in a civil action, if it appears reasonable and proper, the court may order the opposing party to file with the court clerk a bond with surety as required by the court in an amount sufficient to cover all costs and other recoverable expenses that may be awarded by the trial court, or, if the claiming party appeals, by the trial and appellate courts. The court shall determine the amount in its discretion. MCR 3.604(E) and (F) govern objections to the surety.

> **(B) Exceptions**. Subrule (A) does not apply in the following circumstances:

> (1) The court may allow a party to proceed without furnishing security for costs if the party's pleading states a legitimate claim and the party shows by affidavit that he or she is financially unable to furnish a security bond.

As recognized in *In re Surety Bond for Costs*, 226 Mich App at 331-332, a court may only require security if there is a substantial reason for it, explaining:

> Security should not be required unless there is a substantial reason for doing so. [*Farleigh v Amalgamated Transit Union, Local 1251*, 199 Mich App 631, 634;

502 NW2d 371 (1993).] A "substantial reason" for requiring security may exist where there is a "tenuous legal theory of liability," or where there is good reason to believe that a party's allegations are "groundless and unwarranted." *Hall v Harmony Hills Recreation, Inc*, 186 Mich App 265, 270; 463 NW2d 254 (1990). If a party does not file a security bond as ordered, a court properly may dismiss that party's claims. *Id.* at 273.

In *Luckow v Luckow*, 291 Mich App 417, 424; 805 NW2d 453 (2011), this Court recognized that MCL 552.28 allows the trial court to permit the modification of a spousal-support award included in its divorce judgment. For the court to modify its prior award, the party seeking modification must meet the threshold of establishing "new facts or changed circumstances arising since the prior order regarding support was issued." *Id*. If the trial court determines that the party has shown a change in circumstances, then the court must make factual findings indicating whether spousal support should be modified and, if so, by what amount. *Id*. With respect to an award of child support, the trial court retains the "discretionary authority" to modify its award. *Brendel v Morris*, 345 Mich App 138, 149; 4 NW3d 776 (2023). Specifically, a trial court has the ability to modify a child support order " ' as the circumstances of the parents and the benefit of the children require.' " *Id*., quoting MCL 552.517(1).

## C. ANALYSIS

For defendant to prevail in seeking a modification of spousal support, he was required to set forth new facts for the trial court or changed circumstances that had arisen since the prior orders were entered. *Luckow*, 291 Mich App at 424. So too with child support, as a child support order always remains modifiable, and is dependent on changed circumstances. *Brendel*, 345 Mich App at 147. As this Court has acknowledged, "changed circumstances cannot involve facts and circumstances that existed at the time the court originally entered a judgment." *Laffin v Laffin*, 280 Mich App 513, 519; 760 NW2d 738 (2008).

A review of the trial court's written ruling confirms that the trial court duly considered each of defendant's proffered changes of circumstance and new facts, but rejected each of them after determining that the facts and circumstances had existed when the divorce judgment and support orders were entered. Notably, the trial court considered all of the alleged new facts and changed circumstances defendant raised relating to plaintiff's income and lifestyle, and rejected defendant's argument that they warranted a modification of the support orders. The trial court specifically observed that it factored plaintiff's new job as a speech pathologist into its calculations and had also taken into account any earnings plaintiff could make working as a substitute teacher during the summer. The trial court's conclusions were supported by the record, as plaintiff testified during the bench trial and evidentiary hearing that she had taken a new speech pathology job in November 2022. Accordingly, the trial court's determination that it had already considered plaintiff's contract work as a speech pathologist and her plans to work during the summers in its calculations for support purposes was grounded in the evidence.

The trial court did not err in finding that defendant's myriad allegations of changed circumstances all predated entry of the support orders. For example, defendant argued that he had to close his law practice because of the COVID-19 pandemic and the passage of federal legislation providing a moratorium on mortgage foreclosures, but as the trial court correctly observed, this

was a historical event that preceded entry of the support orders. Similarly, the trial court correctly observed that the fact that the New Start Law Group closed in September 2022 was also an event that took place before the parties' judgment of divorce and the support orders were entered. The trial court also rejected defendant's allegation that it had interfered with his ability to seek employment or to work with his friend, Travis Nims, placing him in "a position to fail," and the record supports the trial court's conclusion. Specifically, the record reflects that the trial court ordered that Nims could not be present or speak with the children during defendant's parenting time, but this restriction on defendant's parenting time did not preclude defendant from maintaining a business relationship with Nims and working with him outside of his parenting time.

Defendant also asserted that he was "toxic" in the legal community, no one would hire him to represent clients, and that plaintiff and her counsel conspired to communicate with a law firm within the small bankruptcy community to inform it of an alleged sexual assault. The trial court found these claims unavailing, characterizing them as "completely unfounded," and importantly, recognized these circumstances existed before entry of the judgment and orders.

Having reviewed the record as a whole, we are not persuaded that the trial court made a mistake in its determination. Throughout the lower court proceedings, and prior to entry of the judgment and orders at issue, defendant included copies of the photo of the alleged sexual assault, and the resultant text messages between himself and plaintiff addressing the photo, in support of multiple briefs filed with the trial court. Defendant also acknowledged that he sent his former paralegal and some other trusted individuals copies of the photo of the sexual assault, and was aware that "from that moment forward [defendant] had no expectation of privacy in relation to any of that information." Both defendant and plaintiff also addressed the photo during their trial testimony. Accordingly, we are not left with a definite and firm conviction that the trial court clearly erred in rejecting defendant's contention that plaintiff's alleged actions to sabotage his employment in the bankruptcy field amounted to a changed circumstance that would require the court to revisit child and spousal support. Because defendant did not present the trial court with evidence of changed circumstances or new facts arising after entry of the support orders, the trial court did not err in holding that his motion to modify the trial court's orders of child support and spousal support was without merit. Accordingly, because defendant could not state a legitimate claim, the trial court did not abuse its discretion in denying his motion for leave to proceed without posting bond under MCR 2.109(B)(1).

## III. JUDICIAL BIAS

Defendant next argues, without citation to any authority, that the trial court demonstrated bias against him by (1) referring him to an anger management course, (2) failing to set aside its own ideals when making certain rulings, and (3) shaming and attacking defendant's mental health. Having closely reviewed the record in its entirety, we disagree with these arguments.

### A. PRESERVATION OF THE ISSUES AND STANDARD OF REVIEW

To preserve these issues for appellate review, defendant was required to raise them in the trial court. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). In the lower court proceedings, defendant did not challenge the trial court's decision to refer him to the Step Forward program for anger management as a potential ground for

judicial bias. However, in *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 368002); slip op at 7, this Court held, in the context of child-custody proceedings, that the plain-error standard of review will apply to determine whether a party has forfeited an unpreserved claim of error. Because defendant's argument pertains to a condition of parenting time, the plain-error standard of review applies to his unpreserved claim of error. See *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020).

To the extent defendant preserved the balance of his claims of error regarding judicial bias, this Court reviews the trial court's factual findings in the context of a motion for disqualification for an abuse of discretion, but its application of the facts to the law is reviewed de novo. *Kern v Kern-Koskela*, 320 Mich App 212, 231; 905 NW2d 453 (2017).

## B. LEGAL BACKGROUND

Defendant argues that the trial court's decision to place him in the Step Forward anger management program violated multiple canons of the Code of Judicial Conduct, but in doing so does not cite with specificity the canons that he claims were violated. In his motions seeking the trial court's disqualification filed in the lower court, defendant claimed that the trial court's conduct violated MCR 2.003(C)(1)(b)(ii), which implicated Canon 2 of the Code of Judicial Conduct. While his motions in the trial court were based on different factual allegations, we will analyze defendant's claim under the applicable subpart of MCR 2.003, which provides, in pertinent part:

> **(C) Grounds**.
>
> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

MCR 2.003(C)(1)(a) mandates that if a judge cannot hear a case impartially or is biased against a party, the judge must be disqualified from hearing the case. *Kern*, 320 Mich App at 231. Adverse judicial rulings alone are not a valid basis for a motion alleging bias unless the trial court's opinion reflects a deeply ingrained favoritism for or antagonism against a party that renders fair judgment impossible and overcomes the well-settled presumption of judicial impartiality. *Id.* at 231-232.

In contrast, MCR 2.003(C)(1)(b) is implicated in circumstances when the probability of actual bias on the part of the trial court is " 'too high to be constitutionally tolerable.' " *Caperton*, 556 US at 872, quoting *Withrow v Larkin*, 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975). When such circumstances take place, due process will require recusal. *Caperton*, 556 US at 872.

The ultimate inquiry has been described as "an objective one," and rather than asking if a judge is actually and subjectively biased, the Court must determine whether an average judge is " 'likely' " to be neutral when presiding over a case or if there is an "unconstitutional 'potential for bias.' " *Id*. at 881, quoting *Mayberry v Pennsylvania*, 400 US 455, 465-466; 91 S Ct 499; 27 L Ed 2d 532 (1971).

As relevant to MCR 2.003(C)(1)(b)(ii), Code of Judicial Conduct, Canon 2, provides, in pertinent part:

> **A**. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. *A judge must avoid all impropriety and appearance of impropriety*. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly. [Emphasis added.]

C. PLACEMENT IN STEP FORWARD ANGER MANAGEMENT PROGRAM

Defendant's arguments in Docket No. 367121 concerning the trial court's alleged bias are limited to the trial court's decision to place him in the Step Forward anger management program. However, even if we were to accept defendant's contention that referring him to the Step Forward program amounted to an adverse judicial ruling, an adverse judicial ruling in and of itself will not suffice to establish bias unless the trial court's opinion reflected a deeply ingrained favoritism for or antagonism against a party to the extent that the trial court could not render a fair judgment. *Kern*, 320 Mich App at 231-232. Here, the trial court's comments at the review hearing indicated concern that the online anger management program in which defendant was enrolled would not suffice, and that it wanted him to register and participate in a court-affiliated program. The trial court's conclusion followed plaintiff's statements to the court that defendant was still struggling with his anger management and his behavior impacted their ability to communicate. Accordingly, rather than reflecting a favoritism for plaintiff, or antagonism against defendant, the trial court's ruling reflected a fair judgment in an effort to help the parties coparent in a more effective manner. Notably, the trial court also ordered both parties to enroll in a coparenting course. Having reviewed the record as a whole, there was no indication at any relevant stage of the proceedings that the trial court could not remain neutral, or that there remained a risk of unconstitutional bias. *Caperton*, 556 US at 881.

Likewise, particularly after defendant informed the trial court that he was not able to sign up for any of the anger management programs recommended by the court, the trial court's decision to refer him to Step Forward for an anger management course in no way appeared improper. Code of Judicial Conduct, Canon (2)(A). Instead, it was clear that the court's aim was to take the necessary measures to ensure that both parties could cooperate, collaborate, and communicate in

-7-

a healthy way for the benefit of their children, and defendant's assertions that the trial court was biased and that it violated the canons of the Code of Judicial Conduct are not persuasive.[2]

## D. SHAMING AND ATTACKING DEFENDANT

Defendant also contends that the trial court showed its bias against him because the court shamed and humiliated him, further injuring his mental health as a victim of sexual assault, by placing him in the Step Forward anger management program. The thrust of defendant's argument is that he ought not to have been placed in the program because he did not have any felony or misdemeanor convictions, and therefore did not satisfy its eligibility requirements. Defendant also argues that the trial court's bias against him was made even more apparent because plaintiff did not present testimony at trial from a medical professional that defendant struggled with anger management issues.

Even accepting defendant's contention that he did not meet the eligibility requirements for the Step Forward anger management course, the record reflects that the trial court only considered the Step Forward course as a last resort for defendant after he could not register for any other anger management classes that the trial court recommended because they were either no longer available or defendant could not afford them. The Step Forward anger management course had a minimal registration fee of $25 that defendant could afford. Accordingly, rather than reflecting an antagonism against defendant and an intention to humiliate and shame him by having him enroll in a program for which he was ineligible, the record demonstrates that the trial court referred defendant to the Step Forward program in an effort to accommodate both defendant's schedule and his financial circumstances.

Furthermore, contrary to defendant's assertions, the record was replete with evidence of defendant's impulsivity and his inability to control his anger, particularly toward plaintiff. For example, at trial the guardian ad litem testified that she was the first to recommend anger management for defendant following an incident in August 2021 in which defendant had an angry outburst in front of the children at their therapist's office. Additionally, plaintiff testified that she did not think defendant's sessions with Larry Friedberg, Ph.D., for the past 10 years had been beneficial, and she believed that defendant "couldn't control himself." Dr. Friedberg described defendant as "more impulsive than average or than normal," as well as more "emotionally reactive

---

[2] Defendant also claims that the trial court exhibited its bias against him, and its favoritism toward plaintiff, by concluding that plaintiff's action in placing a sex toy in defendant's mouth and taking pictures before she filed for divorce was merely " ' sexual exploration.' " Aside from cursory references in his brief on appeal, defendant has not presented an organized, coherent, and developed argument to this Court, which renders his claim of error waived. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow.").

than is best for him." In its January 17, 2023 opinion and order, the trial court acknowledged that defendant had been openly angry and acted impulsively toward plaintiff during the lower court proceedings. The trial court also noted that it had to repeatedly admonish defendant after he responded to various questions during his testimony with sarcasm, derision, and condescension. While the trial court acknowledged that the confidential psychological report of Dr. Jack Haynes did not indicate that defendant had a diagnosed mental impairment, it also observed that a contemporaneous report from the GAL indicated that defendant's ongoing anger and resentment toward plaintiff "overshadowed" any meaningful progress in therapy. As a result, defendant's contention that the trial court's decision to require that he enroll in an anger management course was motivated by impermissible bias is not persuasive.

## E. REASSIGNMENT OF TRIAL COURT ON REMAND

Finally, defendant requests that this Court reassign the case to another judge on remand. In *Swain v Morse*, 332 Mich App 510, 537; 957 NW2d 396 (2020), this Court explained the factors that are evaluated in determining whether to remand a case to a different judge, stating:

> In deciding whether to remand to a different judge, this Court considers whether the original judge would have difficulty in putting aside previously expressed views or findings, whether reassignment is advisable to preserve the appearance of justice, and whether reassignment will not entail excessive waste or duplication. [Quotation marks omitted.]

Because the trial court did not err in its ruling denying defendant's ex parte request to proceed with his motion to modify child and spousal support without posting security for costs, remand to the trial court is not necessary. Additionally, defendant has not established that disqualification of the trial court was necessary under MCR 2.003(C)(1)(a) or (b). Therefore, we disagree with defendant that the appearance of justice would be best served by having another judge preside over the case. *Swain*, 332 Mich App at 537. In the context of referring defendant to an anger management course, and in fact throughout the lower court proceedings, the trial court did not express any views, opinions, or findings that we believe it would have difficulty setting aside. *Id*. Moreover, given the protracted and highly contentious nature of these proceedings, as well as the trial court's familiarity with the case, it would not be an effective use of judicial resources for the case to be reassigned to another judge at this point in the proceedings. *Id*.

Affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock